The People *ex rel.* Drake *vs.* the Regents of the University of Michigan.

As a general rule, it is not competent for a private citizen, in a matter where he is not directly injured, to apply for a mandamus, to compel a public board to the performance of an omitted duty; although cases may arise where the Court would permit it, especially if the Attorney General or Prosecuting Attorney (as the case might be), were absent, or refused to act without good cause.

The financial and other interests of the University are entrusted to the judgment and discretion of the Regents. It is a sufficient answer to an application for a mandamus to show cause why they do not appoint to a Professorship established by law, that the appointment in question being likely to interfere with the harmony of the institution, and one requiring great care

The People *ex rel.* Drake *vs.* the Regents of the University of Michigan.

and deliberation in making, they had commenced, and were still making the investigation necessary to enable them to make a proper appointment; especially where there appeared to be no unnecessary delay or want of good faith in their proceedings.

This was an application by the relator, who was a private citizen of this State, for an alternative mandamus against the Regents of the University of Michigan, founded upon his affidavit, which set forth that he was a citizen of this State, that there was, at the time of filing his affidavit, no Professor of Homœopathy in the department of Medicine of the University, that the Regents, whose duty it was, had not only neglected and refused (although often requested thereto) to elect such Professor, but still neglected and refused so to do.

The law, upon which the application was founded, (*Sess. L.*, 1856, *p.* 234), provides, "That the Regents shall have power to enact ordinances, by-laws, and regulations for the government of the University, to elect a President, to fix, increase and reduce the regular number of Professors, and tutors, and to appoint the same, and to determine the amount of their salaries; Provided, there shall always be, at least, one Professor of Homœopathy in the department of Medicine."

At the time the affidavit was filed, and the Court moved for an alternative mandamus, doubts were expressed by some of the Judges whether the Court was empowered to grant the application upon such a showing, in such a case. The Court, however, yielded to the application, upon the suggestion, to which the counsel for the relator assented, that all questions might be reserved to the coming in of the answer of the respondents. The alternative writ was thereupon issued, which was returned with the answer of respondents thereto annexed, in which, before proceeding to answer the merits of the allegations contained in the writ and the relator's affidavit, they excepted : 1. To the right of

the relator to move for the action of the Court in the premises; 2. To the sufficiency of the showing of the relator; and, 3. To the jurisdiction of the Court to interfere with the action of the respondents in the exercise of their Constitutional discretion in the supervision of the University, and in the direction and control of expenditures from the University Interest Fund; all which exceptions they claimed and insisted upon in law. The return, also, sets forth, that while not admitting the right of the Legislature to interfere, the Regents, out of respect to their expressed wishes, appointed a committee in March, 1855, to take the subject into consideration, and correspond with the various institutions in Europe and America, to ascertain the feasibility of uniting such a Professorship with the existing College, and how, if feasible, it could best be done, and where the best man could be found, and that the committee had not concluded their labors; that from the antagonism between the systems, they could not act wisely in the matter, if they were bound to act at all, without full deliberation. To this return the relator demurred.

*Walkers & Russell,* for relator.

As a general rule, a party moving for a mandamus must have an interest in the subject matter, but when the interest is a *public one,* and *merely* public as in this case, any one can move. (*Buller's Nisi Prius,* 201; *A. & A. on Corp.,* 663; *People* vs. *Collier,* 19 *Wend.,* 64; *Co. of Pike* vs. *State of Ill.,* 11 *Ill.,* 202.)

The insufficiency of the relator's affidavit is alleged, but no deficiency is named. A failure to elect an officer of a public Corporation, as required by law, is good ground for mandamus. (*A. & A. on Corp.,* 624, 625; *the King* vs. *Commissioners,* 1 *T. R.,* 146; *Tappan on Mandamus,* 68, 80, 148, 192, 193, 228, 261.

The People *ex rel.* Drake *vs.* the Regents of the University of Michigan.

*G. V. N. Lothrop* and *J. V. Campbell*, for respondents.

The relator is not competent to sue out a mandamus against the Regents. If they have been guilty of a legal offence, they must be prosecuted or pursued by the public authorities, or some person directly injured. The applicant in this case is not injured individually.

Even the English authorities, which are relied on, do not establish such a doctrine as is needed to support this complaint. The relators there are always found to have some personal claim or right, distinct from that of being a citizen of the realm. No case can be found there which has allowed a private citizen to interfere with the public boards of the kingdom, where he has not been directly and individually damnified. And the absence of authority to this point is the more important, because there is no public prosecutor in England, and all offences are followed up by private prosecutors. In this State, it is made the duty of public prosecutors in all cases to act. (*R. S., p.* 58, 72; *Sanger vs. Co. Com'rs,* 25 *Maine R.,* 295; *Com. vs. Reading,* 1 *Jones' Pa. R.,* 191; *People vs. Tracy,* 1 *Denio,* 617; *Wellington Petitioner,* 16 *Pick.,* 105.)

The writ being in the sound discretion of the Court, and not a writ of right, will never be issued in a case where the public good does not require it. (*Ex parte Paine,* 1 *Hill,* 665.) And there are several good reasons why the Court should not interfere, even if it has the power.

1. Because there is no pressing necessity apparent; 2. Because the delay is not unreasonable; and, 3. Because the interference would be disastrous.

By the Court, WING, J.

The first objection is predicated upon the alleged incapacity of an individual citizen, who is only interested in common with all other citizens of the State in the subject matter of

complaint, to institute a proceeding of this kind against a public Corporation, sustaining the relations which the University of Michigan does to this State.

It is alleged that where there is a cause of complaint against a public body or corporation, it is the duty of the Attorney General of the State to move against them, and that it would be peculiarly fit in a matter of complaint of so grave a character as that presented by the affidavit of the relator, that it should be presented by, or be under the control and sanction of that officer, whose duty it is to act in all such cases. To this it is answered by the counsel of the relator in substance, that though true it is, the matter in question is one that interests the citizens generally, yet the right of every citizen of the State to move in the proper Courts in a matter in which the citizens at large are concerned, and in respect to which there is ground of complaint against a public body or officers of this State, that they have neglected the performance of some duty imposed upon them by law, is fully sustained both by principle and authority.

Upon examination of the authorities cited by the counsel of the respective parties, we find no case decided by the English Courts which sanctions this action of their Courts on an application of this character, upon the sole motion of a private citizen of the realm. From this, it is, we think, to be inferred that the practice was never sanctioned by their Courts.

On looking into the American authorities cited, we find that the Supreme Court of New York have taken the broad ground in the case of The People *vs.* Collier (19 *Wend.*, 64, *and in* 1 *Denio.*, 618), that in all cases requiring redress, and involving a matter in which the interests of the public at large are concerned, and in respect to which a mandamus is the proper remedy, it is competent for their Courts to act upon the relation and motion of a private citizen of the State. The doctrine of those cases was approved and followed by the

Supreme Court of Illinois, in the case of the County of Pike *vs.* The State (11 *Illinois Rep.*, 202). These are the only cases to which we have been cited, or which have fallen under our observation, which sanction the right claimed by the relator in this case.

To these authorities, as we have said, are opposed the fact that the English Courts, which have moulded and formed the Common Law, transmitted it to us, and which governs both them and us, have not sustained a course of proceeding like this. The Courts of Maine, Massachusetts and Pennsylvania, have maintained a doctrine on this subject opposed to the New York and Illinois cases, and have held that, to entitle an individual citizen to be heard as a relator and on his own motion, he must show that he has some individual interest in the subject matter of complaint which is not common to all the citizens of the State; and whilst we do not intend to say that a case may not arise in which this Court would allow an individual to file such a complaint, particularly if the Attorney General or Prosecuting Attorney (as the case may be) were absent, or refused to act without good cause, we nevertheless express our conviction that this is a case in which the action of the Attorney General would have been proper and necessary.

The views we have expressed would seem to make it unnecessary to decide the other questions presented, particularly the Constitutional question, but we have thought it would be proper to pass upon the questions presented by the answer and demurrer. We will, therefore, proceed to an examination of the answer. The facts being admitted, their sufficiency in law to defeat this proceeding, is alone to be considered.

The respondents state their belief, that the law requiring them to appoint a Homœopathic Professor in the Medical department of the University, is unconstitutional. Yet, being desirous of treating with proper respect the expression of the Legislative will in the section quoted, they did, on the 30th

March last, appoint a committee to enter into correspondeuce with other Universities in Europe and in this country, to determine the feasibility of establishing such a Professorship, and the most eligible person to fill such a chair when established, and that the committee has been actually engaged ever since in conducting such correspondence, and in gathering information from all sources, and are still engaged diligently in the same work.

The respondents are Constitutional officers, to whom are confided by the Constitution (*Art. XIII, sec.* 8), " the general supervision of the University, and the direction and control of all expenditures from the University Interest Fund.' They are elected by the people. They come at short intervals fresh from the body of the people, and cannot be supposed to be influenced by sentiments not common to those they represent. To their judgment and discretion as a body is committed the supervision of the financial and all other interests of an institution in which all the people of this State have a very great interest. In the words of the law in question, they are required to enact ordinances, by-laws and regulations for the government of the University ; to reduce and increase the regular number of Professors, and to appoint the same, and to determine the amount of their salaries. To this body of men, possessing such powers, and upon whom such duties are incumbent, this proviso is directed. They had already provided Professors for the Medical department, under a system which had been in successful operation many years, and they were required to introduce a new, and as they say, an antagonistic element into that department, which in their judgment was likely to clash with the system already established, and produce embarrassment to the Board and the Institution under their control, not easily to be surmounted, and which it required time and investigation to harmonize and adjust. They nevertheless entered upon the proper investigations, with a view to accomplish the duty devolved upon

them by the law. They aver that in the month of March of last year, and before the law took effect, they entered upon the active discharge of duties, which must precede the actual appointment of the new Professors ; and though we have not been able to discover in their answer, or in any visible result of their labors, any clear evidence of their activity and zeal in the prosecution of their duty, neither are we able clearly to perceive, under all the circumstances of the case, that there has been any unnecessary delay or lack of good faith in their proceedings. They aver that they have acted in good faith, but at the same time under the influence of much uncertainty as to the constitutionality of the law, and we are compelled to recognize in this question what might well suggest doubts of the binding force of the law, and occasion some hesitation in their action.

The relator suggests no pressing necessity for the immediate action of the board, neither does he show that the rights of any individual or class of persons is jeoparded or injuriously affected by the delay that has occured in their action. All that is averred, or that can be inferred from the affidavit of the relator, is, that the Board of Regents have hitherto and unnecessarily neglected to obey the behests of the law, which is claimed to be binding upon them, and which demands a more speedy obedience to its requirements, than has been yielded to it by the respondents. The real question is one of time. The respondents have not refused to act, but they have acted tardily, and, as the relator suggests, in bad faith, if at all. We, however, are of the opinion, upon a full view of all the facts presented for our consideration, and which are admitted by the relator, that the case made out is not one which would authorize the further action of this Court at this time. We admit, that a mandamus though a prerogative writ, is demandable of right in a proper case, yet it is only to be granted by this Court in the exercise of a sound legal discretion ; and hence ought only to be invoked in cases

14

of the last necessity. This necessity we have been unable clearly to discover in this case. The Board of Regents have a sound discretion to exercise, and until it is made apparent that they seek to evade the law, by unneessary and willful delays, the exercise of our discretionary power cannot be called into action.

Present, all the Judges.