## BAUER v. STATE BOARD OF AGRICULTURE.

1. COLLEGES AND UNIVERSITIES—STATE BOARD OF AGRICULTURE.
Under sections 7 and 8, Art. 11, Const. of 1909, the State board of agriculture has exclusive control of the general funds of the Michigan agricultural college. Per OSTRANDER, C. J., and McALVAY and BLAIR, JJ.

2. SAME.
It is within the power of the board to appropriate such general funds for the purpose of constructing a building upon the college grounds, to be leased to the United States for a post office. Per OSTRANDER, C. J., and McALVAY and BLAIR, JJ.

3. MANDAMUS—PROPRIETY OF REMEDY—RESTRAINING ACTION.
Mandamus is not the proper remedy to restrain the State board of agriculture from an alleged misapplication of the funds of the Michigan Agricultural College. Per MOORE, HOOKER, BROOKE, STONE, and BIRD, JJ.

Mandamus by Anton C. Bauer against the State board of agriculture to compel respondents to abrogate a con-

tract with the United States post office department and to restrain the construction of a building to be leased for use as a post office. Submitted November 29, 1910. (Calendar No. 24,265.) Writ denied February 1, 1911.

*Chas. H. Chase,* for relator.

*Franz C. Kuhn,* Attorney General (*Arthur P. Hicks,* of counsel), for respondent.

BLAIR, J.   Upon the petition of the relator an order to show cause was made by this court, directed to the respondent, the State board of agriculture, requiring it to show cause why the writ of mandamus should not issue to compel it to—

"Abrogate the contract heretofore made or attempted to be made with the United States government, whereby it, the said State board of agriculture, has agreed to furnish quarters for a United States post office at East Lansing, Mich.   (*b*) That it cease from construction and expending moneys for construction of quarters for a United States post office at East Lansing, Mich.   (*c*) That it cease from furnishing quarters for a United States post office at East Lansing, Mich., within such reasonable time as to this court shall seem reasonable and expedient."

The interest of relator, as disclosed by the record, is that he is a citizen and a taxpayer of the county of Ingham, doing a mercantile business in the city of East Lansing in a building of which he has a lease to and including August 31, 1916; that there was an agreement entered into with W. R. Hinman, assistant superintendent of the post office department at Washington, having charge of buildings and leases, to locate the post office at East Lansing in relator's leased building; that this agreement was not executed and delivered by the post office department because of the intervention of the respondent, through its secretary, which resulted in a contract between the respondent and the post office department of the United States, whereby the respondent agreed to furnish quarters

and equipment for the said post office, to be located upon the college grounds, for an annual rental of $600.

Relator contends:

"The law creating the State agricultural college and the State board of agriculture contains no provision by which it can be inferred that the State board of agriculture is clothed with power to engage in the business of building for and furnishing quarters to the United States for a post office any more than to a private individual for his private business, nor does such right arise by implication from any of the powers granted said board"

We are of the opinion that this case is ruled by *Sterling* v. *Regents of University,* 110 Mich. 369 (68 N. W. 253, 34 L. R. A. 150). In the Constitution of 1909 two new sections, 7 and 8, relative to the State board of agriculture, were added to article 11, the effect of which was to make the State board of agriculture a constitutional board elected by the people instead of a statutory board appointed by the governor, as it had existed since 1861, and to define the principal powers and duties of the board in the Constitution itself. It is apparent from the debates in the constitutional convention, as well as from the language of sections 7 and 8, that it was the intention to place the State board of agriculture and the agricultural college upon the same footing as the board of regents and the university. Among other expressions of the delegates to the convention, we quote the following:

"*Mr. Gore:* Mr. President, the last section of this proposal which was defeated yesterday, I have been informed, was defeated under some misapprehension. I know that I was laboring under an apprehension that there was very little, if any, demand for that portion of the proposal as contained in the last paragraph. I am advised that the friends of the agricultural college all over this State are very much interested in that portion of the proposal becoming a part of the revised Constitution. It is obvious that the requirements of the agricultural college are on a par with the university so far as its management is concerned. There is no doubt that the friends of that college,

the particular friends I now refer to, all over the State, will take such an interest in its welfare that it can properly be intrusted to a board of regents in the same manner as the university is now conducted. I therefore trust that this proposal will meet with the favorable judgment of the convention."

"*Mr. W. E. Brown:* The words 'members of the board' were stricken out of the tentative draft on page 53, line 82, and the words 'State board of agriculture' were substituted in their place. And in the same line the words 'may be' were stricken out and the words 'often as' were substituted in their place, so that the section follows the wording of the section with reference to the regents. In line 86 of the tentative draft, the word 'State,' and in line 87, the words 'of agriculture' were stricken out, and at the end of the section these words were added, 'and shall perform such other duties as may be prescribed by law.' We ascertained after the section was passed that there were other duties besides these that the law prescribes to be performed by the board of agriculture, and we took it that it was your intention that the entire duties as prescribed by law should apply to this board until such time as its duties might be changed."

The addition to the last clause of section 8 of the words, "and shall perform such other duties as may be prescribed by law," makes it clear that the duties to be prescribed by the legislature are other than "the general supervision of the college and the direction and control of all agricultural college funds," as to which, as we held in *Sterling* v. *Regents of University, supra,* the State board of agriculture has exclusive supervision and control. We do not intend to hold that an act of the board might not be so subversive of the purposes for which the board was created as to warrant the intervention of the courts, but we do not think this record presents such a case, nor do we intend to hold that the legislature may not make appropriations for specific objects or attach conditions which would be binding upon the State board of agriculture in case they accepted the appropriations; but we do hold that as to the general funds appropriated for the general purposes of the agricultural college, the board has the ex-

clusive control and direction, to the same extent that we held such power was possessed by the board of regents in the *Sterling Case* above referred to.

The writ is denied, but without costs.

OSTRANDER, C. J., and McALVAY, J., concurred with BLAIR, J.

MOORE, J.   I concur in the result, but do not regard mandamus as the proper remedy.

HOOKER, BROOKE, and STONE, JJ., concurred with MOORE, J.

BIRD, J.   I concur in the result on the sole ground that mandamus is not the proper remedy.