PETERS v. MICHIGAN STATE COLLEGE.

1. WORKMEN'S COMPENSATION—STATE BOARD OF AGRICULTURE—
EQUALLY DIVIDED COURT.

Order denying motion to dismiss employee's claim for workmen's
compensation for injuries received while an employee of State
college under the control and general supervision of the State
board of agriculture is affirmed by a court equally divided as
to whether or not the legislature may subject the board to the
workmen's compensation act (Const. 1908, art. 11, §§ 7, 8;
2 Comp. Laws 1929, § 8411, as amended by Act No. 245, Pub.
Acts 1943).

2. COSTS—PUBLIC QUESTION—STATE BOARD OF AGRICULTURE—WORK-
MEN'S COMPENSATION.

No costs are allowed in proceeding to determine whether the
State board of agriculture is subject to the workmen's com-
pensation act, a public question being involved (Const. 1908,
art. 11, §§ 7, 8; 2 Comp. Laws 1929, § 8407 et seq., as last
amended by Act No. 325, Pub. Acts 1945).

Appeal from Department of Labor and Industry.
Submitted April 11, 1947. (Docket No. 65, Calendar
No. 43,693.) Decided February 16, 1948. Rehearing
denied April 5, 1948.

Robert W. Peters presented his claim .against
Michigan State College for injuries sustained while
in its employ. Motion to dismiss denied. Defend-
ant appeals. Affirmed by an equally divided court.

*Raymond H. Rapaport,* for plaintiff.

*Shields, Ballard, Jennings & Bishop,* for defend-
ant.

Reid, J. (*for affirmance*). On April 23, 1946, plaintiff Robert W. Peters filed an application for hearing and adjustment of claim as an employee of Michigan State College, which is under the control and general supervision of the State board of agriculture, which board is hereinafter referred to as defendant, alleging that he suffered a personal injury on February 12, 1946, which arose out of and in the course of his employment.

On May 4, 1946, defendant filed a motion to dismiss plaintiff's application for hearing and adjustment of claim on the ground that defendant, not having elected to become subject to the Michigan workmen's compensation act and amendments thereto, was not subject to the provisions of said act. A deputy commissioner entered an order denying the motion.

On July 10, 1946, the defendant applied to the compensation commission of the department of labor and industry for review of claim. The commission on January 9, 1947, pursuant to opinion simultaneously filed, entered its order denying the defendant's motion, and remanded the case to a deputy commissioner to be heard on its merits. From this order (on leave being granted) defendant appeals.

The sole issue presented is whether the defendant, a constitutional corporation, is subject to the provisions of the Michigan workmen's compensation act, as amended.

Part 1, § 2 of the act, 2 Comp. Laws 1929, § 8408, as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8408, Stat. Ann. 1947 Cum. Supp. § 17.142), in part reads as follows:

"Sec. 2. On and after the effective date of this section, every employer, public and private, and every employee, unless herein otherwise specifically

provided, shall be subject to the provisions of this act and shall be bound thereby."

Part 1, § 5, of the act, 2 Comp. Laws 1929, § 8411, as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8411, Stat. Ann. 1947 Cum. Supp. § 17.145), reads as follows:

"SEC. 5.  The following shall constitute employers subject to the provisions of this act:

"*Public*. 1.   The State, and each county, city, township, incorporated village and school district therein, and each incorporated public board or public commission in this State authorized by law to hold property and to sue or be sued generally;

"*Private*. 2.   Every person, firm and private corporation, including any public service corporation, who has any person in service under any contract of hire, express or implied, oral or written."

The defendant is an "incorporated public board" within the meaning of section 5 above quoted.

Sections 7 and 8, art. 11, State Constitution 1908, are as follows:

"SEC. 7.   There shall be elected on the first Monday in April, nineteen hundred nine, a State board of agriculture to consist of six members, two of whom shall hold the office for two years, two for four years and two for six years.   At every regular biennial spring election thereafter, there shall be elected two members whose term of office shall be six years.   The members thus elected and their successors in office shall be a body corporate to be known as 'The State Board of Agriculture.'

"SEC. 8.   The State board of agriculture shall, as often as necessary, elect a president of the agricultural college, who shall be ex-officio a member of the board with the privilege of speaking but not of voting.   He shall preside at the meetings of the board and be the principal executive officer of the college. The board shall have the general supervision of

the college, and the direction and control of all agricultural college funds; and shall perform such other duties as may be prescribed by law.''

We note that in section 7, above cited, the defendant is designated a body corporate, hence our conclusion that defendant is an incorporated public board.

The sole remaining question is whether it is competent for the legislature to prescribe that the defendant shall be subject to the workmen's compensation act.

Defendant claims that. the provision in section 8, above cited, that the board (defendant) shall have the general supervision of the college and the direction and *control* of all *agricultural college funds,* prevents the legislature from requiring the board to expend any of the agricultural college funds for workmen's compensation.

Defendant cites *Robinson* v. *Washtenaw Circuit Judge,* 228 Mich. 225, which involved malpractice suits brought against the regents of the University of Michigan and a surgeon employed in the university hospital. The suits had been dismissed in circuit court and plaintiffs in those suits brought mandamus to compel the circuit judge to set aside his orders of dismissal. The board of regents (defendant in the original suits) had claimed immunity on the ground that the university hospital operated by the regents is a charitable institution. The opinion in the case says, page 227, that that ground is the only objection regarded as calling for serious consideration. However, at the conclusion of the opinion on page 230 we say, ''On the case stated in plaintiffs' declarations we think denial of liability as to the regents could safely be rested on either ground,'' referring to the words, ''State instrumen-

talities, as well as charities," in the immediately preceding excerpt quoted, in that opinion. In other words, we held that the board of regents was immune both on the ground of being a State instrumentality and on the ground of their hospital being a charitable or eleemosynary institution.

Immunity of defendant in the case at bar as a State governmental agency is not provided for in our State Constitution and the legislature by force of the words, "incorporated public board" has included defendant as an employer subject to the workmen's compensation act, thus to that extent depriving defendant of its 'immunity as an instrumentality of government. See *Benson* v. *State Hospital Commission,* 316 Mich. 66.

The *Robinson Case, supra,* does not in any wise discuss the meaning and effect of the constitutional clause giving defendant control of the funds of the college and the decision in that case does not aid the defendant in the case at bar.

Under the workmen's compensation act as originally enacted by Act No. 10, Pub. Acts 1912 (1st Ex. Sess.), the private employer was at liberty to accept or not to accept the provisions of the act, but the State and political subdivisions thereof in general (with certain exceptions) were included as subject to the act without their consent.

In part 1, § 5, of the act, as amended by Act No. 50, Pub. Acts 1913, effective August 14, 1913 (2 Comp. Laws 1929, § 8411 [Stat. Ann. § 17.145]), under the heading, "*Public.* 1.," incorporated public boards are made subject to the provisions of the act. Such incorporated public boards were not subject to nor mentioned in the act as originally enacted (Act No. 10, Pub. Acts 1912 [1st Ex. Sess.]), above referred to. In the case of *Agler* v. *Michigan Agricultural College,* 181 Mich. 559 (5 N. C. C. A. 897), the em-

ployee was injured April 18, 1913, which was before the act of 1913, *supra,* was effective; hence in the *Agler Case* we say, page 563, that "the respondent was not within the list of employers who come under the provisions of the law of 1912 automatically." Defendant was not within such list at the time Agler received his injuries. The words just quoted must be construed to apply to the situation at the time of the occurrence of the supposed liability. · The question before the Court in the case at bar was not decided in the *Agler Case.*

The case of *State Board of Agriculture* v. *Auditor General,* 226 Mich. 417, was brought in consequence of an effort on the part of the State administrative board to control the expenditures of the plaintiff State board of agriculture (the same board which is defendant in the case at bar) under an act of the legislature granting the State administrative board such powers. If the administrative board had been upheld in its contention, it would have exercised control over the educational activities of the college. In that case we held that the State administrative board could exercise no control over the funds of the college, such control being given to plaintiff board under the provisions of the Constitution 1908, art. 11, §§ 7, 8 (hereinbefore cited in this opinion). However, the provision of the Constitution giving the State board of agriculture sole control of the funds of the college does not generally exempt the said board from the great body of general laws of this State. It is to be noted that section 8 of article 11 of the State Constitution above quoted closes with the words, referring to the State board of agriculture, "shall perform such other duties as may be prescribed by law."

We have heretofore had occasion to pass upon the constitutionality of the workmen's compensation

act as to some one or other of its various provisions in several cases, among which are the following: *Mackin* v. *Detroit-Timkin Axle Co.,* 187 Mich. 8; *Wood* v. *City of Detroit,* 188 Mich. 547 (L. R. A. 1916 C, 388); *Grand Rapids Lumber Co.* v. *Blair,* 190 Mich. 518; *Wall* v. *Studebaker Corporation,* 219 Mich. 434; *American Life Insurance Co.* v. *Balmer,* 238 Mich. 580. In none of these cases has the act been found unconstitutional as to any phase of the act brought under consideration therein.

We have heretofore decided in the *Mackin Case,* *supra,* that the title of the act in question fairly expressed its purpose.

The purpose of the workmen's compensation act partakes of the nature of the exercise of police power. It is aimed at promoting the welfare of the people of the State. See *Wallace* v. *Regents of University of California,* 75 Cal. App. 274 (242 Pac. 892); *Casey* v. *Hansen,* 238 Iowa, 62 (26 N. W. [2d] 50).

"The sovereign power of the State includes protection of the safety, health, morals, prosperity, comfort, convenience and *welfare* of the public, or any substantial part of the public." (Italics supplied.) *Cady* v. *City of Detroit,* 289 Mich. 499, 504, 505.

The defendant corporation is not vested by the State Constitution with any powers of a police nature. Neither is the defendant corporation vested with any power to regulate the general welfare of the people of this State. It is for the legislature to exercise such powers.

As amended in 1920, article 5, § 29, of the State Constitution provides as follows:

"SEC. 29. The legislature shall have power to enact laws relative to the hours and conditions un-

der which men, women and children may be employed.''

Before the amendment of 1920 (which added the word ''men'' in the above section), we had decided in *Wood* v. *City of Detroit,* 188 Mich. 547 (L. R. A. 1916C, 388), that the workmen's compensation act was not violative of the State Constitution even as respects liability for death of an employee of a municipality through its public lighting commission, notwithstanding rights of local self-government given by the Constitution to municipalities. In that case we said, page 560,

''Whether it [the workmen's compensation act] is or is not denominated a police regulation, municipal corporations are, for the purpose of carrying out such a measure, subject to legislative control.''

We find that the workmen's compensation act is a valid constitutional exercise of the power of the legislature even when it makes necessary the expenditure of agricultural college funds in the compensation of employees under the terms and within the provisions of the workmen's compensation act.

The act is approved as a piece of legislation aimed not at the defendant alone, nor against any of the activities of the defendant of a nature peculiar to defendant. The act is of a broad scope addressed to the subject of the liability of employers in broad fields of employment. The workmen's compensation act does not undertake to change or disturb the educational activities of the defendant board.

The control of State college funds must be considered as given to defendant for the purposes of the particular and peculiar educational activities of the State college, not for the purpose of disturbing the general relationship in this State of employer and employee, nor evading laws enacted to promote

the general welfare of the people of this State.   Article 11, § 8, above cited, is not to be construed as withholding from the legislature the authority to make the defendant board liable and subject to the entire workmen's compensation act in question.

The order of the department remanding the claim for hearing on its merits is affirmed.   No costs are allowed, a matter of public importance being involved.

BUTZEL, J. (*concurring*).   I concur on the ground that the workmen's compensation act is a valid exercise of the police power.   BUSHNELL, C. J., and SHARPE, J., concurred with BUTZEL, J.

DETHMERS, J. (*for reversal*).   My attitude toward the opinion of Mr. Justice REID is well expressed in the language employed by the majority of this Court in commenting on the dissenting opinion of Mr. Justice WIEST in *State Board of Agriculture* v. *Auditor General*, 226 Mich. 417, in which Mr. Justice McDONALD, speaking for the majority of the Court, said:

"I am in entire disagreement with the conclusions reached by Mr. Justice WIEST in reference to the powers and duties of the State board of agriculture. If his opinion is to prevail we will have completely overturned the well settled policy of the State relative to the management and control of the university and of the agricultural college.   These institutions of learning are very close to the hearts of the people of Michigan.   They have made of them the most unique organizations known to the law, in this, that they are constitutional corporations created for the purpose of independently discharging State functions.   The people are themselves the incorporators; the boards that control them are responsible only to the people who elect them; they are independent of every other department of State government."

To the statement contained in Mr. Justice REID's opinion that plaintiff suffered a personal injury which arose out of and in the course of his employment by defendant should be added the further fact that it is not disputed that such employment and the duties which plaintiff was performing at the time of his injury were within the scope and in furtherance of college operations. May the legislature, as relates to such employment, prescribe that the defendant shall be subject to the provisions of the workmen's compensation act? I think not.

As stated in my Brother's opinion, the Michigan Constitution of 1908, art. 11, § 8, provides that the board "shall have the general supervision of the college, and the direction and control of all agricultural college funds." Plaintiff's work, at the time he became injured, was being performed squarely within the field over which the defendant board is given supervision. Furthermore, to require payment of compensation in such case directly affects the defendant's constitutionally-conferred power of direction and control over all agricultural college funds. The constitutional grant to defendant board of *supervision, direction* and *control* in these respects, must be deemed absolute to the exclusion therefrom of interference by the legislature. *Sterling* v. *Regents of University of Michigan,* 110 Mich. 369 (34 L. R. A. 150); *Weinberg* v. *Regents of University of Michigan,* 97 Mich. 246; *Bauer* v. *State Board of Agriculture,* 164 Mich. 415; *State Board of Agriculture* v. *Auditor General, supra.*

My Brother's opinion cites no decisions of this Court as authority for the proposition that the legislature may exercise control directly or indirectly over those fields as to which the regents of the university or the State board of agriculture are given the powers of supervision by the Constitution. This

is not because the question has not heretofore been considered by this Court. Our decisions on the subject are numerous, ranging from shortly after the grant of powers to the board of regents by the Constitution of 1850 until recent times. Through them all runs a uniform thread of authority to the effect that the fields over which the Constitution delegates supervisory powers to the regents or board of agriculture are not to be invaded by the legislature. A review of these cases is essential here.

In *People, ex rel. Drake,* v. *Regents of the University,* 4 Mich. 98, this Court denied an application for mandamus to compel the regents to comply with a statute enacted by the legislature requiring appointment by the regents of a professor of homeopathy. In response to the claim that the statute was unconstitutional because it constituted an invasion of the regents' constitutional powers, this Court said:

"We are compelled to recognize in this question what might well suggest doubts of the binding force of the law."

In *People* v. *Regents of the University,* 18 Mich. 469, like application for mandamus was made as in the case reported in 4 Mich. 98 and the application was not granted because a majority of the Court could not be convinced that "the legislature had power under the Constitution to exercise any such control over the regents, who are vested with the 'general supervision of the university, and the direction and control of all expenditures of the university interest fund'" (syllabus).

In *People, ex rel. Attorney General,* v. *Regents of the University,* 30 Mich. 473, like application received like treatment because the Court, as stated in its

opinion, had not changed its previous views (clearly a reference to the last above cited case).

In *Weinberg* v. *Regents of the University of Michigan*, 97 Mich. 246, plaintiff brought suit against the regents to recover the value of materials furnished to a subcontractor in building the university hospital. Action was predicated upon a statute requiring public boards, officers or agents making contracts for the construction of public buildings to require security by bond for payment by the contractor and all subcontractors of all labor and material claims. The regents, in contracting for the building of the hospital, had required no such security by bond. A judgment for plaintiff in the court below was reversed, a majority of this Court holding that the statute in question did not control the regents. The majority opinion, in so holding, alluded to the fact that this Court had refused to compel the regents to comply with certain legislative acts in the three last above cited cases.

In *Sterling* v. *Regents of University of Michigan*, 110 Mich. 369 (34 L. R. A. 150), mandamus was sought to compel the regents to comply with an act of the legislature providing for removal of the homeopathic medical college from Ann Arbor to Detroit. The writ was denied on the authority of the *Weinberg Case* and for the expressed reason that "the legislature has no control over the university or the board of regents." The opinion in this case contains an extended analysis of the entire general question before us, including the history of the constitutional grant of powers to the regents, the reasons therefor, construction of the constitutional language employed for that purpose, and a review of the decisions thereon.

In *Bauer* v. *State Board of Agriculture,* 164 Mich. 415, wherein the power of the defendant board to

expend funds of the college for the purpose of constructing a building for lease to the United States government for post office purposes was challenged, this Court, in upholding such power, held that the defendant board had exclusive control and direction of the general funds of the college appropriated for the general purposes of the college.

In *Board of Regents of the University of Michigan v. Auditor General,* 167 Mich. 444, we granted a writ of mandamus to compel the auditor general to issue a warrant upon the State treasurer for certain university expenditures after the auditor general had refused to issue it because the university had expended moneys in violation of the accounting laws of this State. The writ was granted on the ground "that the board of regents has independent control of the affairs of the university."

In *Agler v. Michigan Agricultural College,* 181 Mich. 559 (5 N. C. C. A. 897), discussed at greater length later in this opinion, we held that the defendant was not subject to the workmen's compensation act for the reasons stated in *Weinberg v. Regents of University of Michigan, supra.*

In *People for use of Regents of the University of Michigan,* v. *Brooks,* 224 Mich. 45, involving condemnation proceedings for the use and benefit of the regents, we said:

"The 'board of regents' is a separate entity, independent of the State as to the management and control of the University."

*State Board of Agriculture v. Auditor General,* (syllabus 2) *supra,* reads as follows:

"The condition attached by Act No. 308, Pub. Acts 1923, that the money thereby appropriated to the State board of agriculture for the purpose of carrying on agricultural extension work in co-operation

with the United States department of agriculture should be subject to the general supervisory control of the State administrative board, *held,* beyond the power of the legislature to impose, being in conflict with the Constitution (Art. 11, § 8) giving to the State board of agriculture exclusive control of all of its funds.''

This concludes a summary review of all the Michigan decisions on the subject, disclosing the uniform position taken by this Court over a period of almost 70 years, in unmistakably clear opposition to the views now expressed by Mr. Justice REID.

In *Agler* v. *Michigan Agricultural College, supra,* we said:

''By virtue of the Constitution of 1909 (1908), the State board of agriculture was put on the same plane with the board of regents of the university of Michigan. It has been established beyond question by decisions of this Court that neither the legislature nor any officer or board of this State may interfere with the control and management of the affairs and property of the university.''

From this quotation it is clear that all which this Court has heretofore said concerning the independence of the board of regents of the university applies with equal force and effect to the State board of agriculture under its present constitutional powers.

I am not in accord with my Brother's analysis of the *Agler Case.* In that case we said, in part, as follows:

''For the reasons stated by Mr. Justice GRANT in the *Weinberg Case,* we must conclude that it cannot be said that the State board of agriculture or the regents of the university are brought under the workmen's compensation act.''

The reasons stated by Mr. Justice GRANT in the *Weinberg Case,* and quoted in the *Agler Case,* are as follows:

" 'If the university were under the control and management of the legislature, it would undoubtedly come within this statute, as do the agricultural college, normal school, State public school, asylums, prisons, reform schools, houses of correction, et cetera. But the general supervision of the university is, by the Constitution, vested in the regents.

\* \* \*

" 'The university is the property of the people of the State, and in this sense is State property so as to be exempt from taxation. *Auditor General* v. *Regents of the University of Michigan,* 83 Mich. 467 (10 L. R. A. 376). But the people, who are the corporators of this institution of learning, have, by their Constitution, conferred the entire control and management of its affairs and property upon the corporation designated as "the Regents of the University of Michigan," and have thereby excluded all departments of the State government from any interference therewith. The fact that it is State property does not bring the regents within the purview of the statute. The people may, by their Constitution, place any of its institutions or property beyond the control of the legislature.' "

This language from the *Weinberg Case* I deem controlling here. In that case we also said "under the Constitution, the State cannot control the action of the regents."

In *Sterling* v. *Regents of University of Michigan, supra,* in commenting on the *Weinberg Case,* we said:

"We might with propriety rest our decision upon that case, and should be disposed to do so were it not for the urgent contention of the counsel on the part of the relator that that case does not apply.

We are therefore constrained to state *some further reasons to show that the legislature has no control over the university or the board of regents.*

"(1)  The board of regents and the legislature derive their power from the same supreme authority, namely, the Constitution.  In so far as the powers of each are defined by that instrument, limitations are imposed; and a direct power conferred upon one necessarily excludes its existence in the other, in the absence of language showing the contrary intent. Neither the university nor the board of regents is mentioned in article 4, which defines the powers and duties of the legislature; nor in the article relating to the university and the board of regents is there any language which can be construed into conferring upon or reserving any control over that institution in the legislature.  They are separate and distinct constitutional bodies, with the powers of the regents defined.  By no rule of construction can it be held that either can encroach upon or exercise the powers conferred upon the other."

In *Board of Regents of the University* v. *Auditor General, supra,* we said:

"By the provisions of the Constitution of 1850, repeated in the new Constitution of 1909 (1908), the board of regents is made the highest form of juristic person known to the law, a constitutional corporation of independent authority, which, within the scope of its functions, is co-ordinate with and equal to that of the legislature.  By the old Constitution it is given 'direction and control of all expenditures from the university interest fund' (section 8, art. 13); and by the new Constitution 'general supervision of the university, and the direction and control of all expenditures from the university funds.'  Section 5, art. 11.  That the board of regents has independent control of the affairs of the university by authority of these constitutional provisions is well settled by former decisions of this Court."

In *State Board of Agriculture* v. *Auditor General,* *supra,* 423, we also said:

"The State board of agriculture stands on the same constitutional footing as the board of regents of the university. The progress which our university has made is due in large measure to the fact that the framers of the Constitution of 1850 wisely provided against legislative interference by placing its exclusive management in the hands of a constitutional board elected by the people. The underlying idea was that the best results would be attained by centering the responsibility in one body independent of the legislature and answerable only to the people. See *Sterling* v. *Regents of University of Michigan,* 110 Mich. 369, 382 (34 L. R. A. 150). For this reason the Constitution gave the regents the absolute management of the university, and the exclusive control of all funds received for its use. This Court has so declared in numerous decisions. *People, ex rel. Drake,* v. *Regents of the University,* 4 Mich. 98; *Weinberg* v. *Regents of the University of Michigan,* 97 Mich. 246, 254; *Sterling* v. *Regents of University of Michigan, supra; Board of Regents of the University* v. *Auditor General,* 167 Mich. 444."

Mr. Justice REID writes that the State Constitution does not provide for the "immunity of defendant * * * as a State governmental agency" and that the legislature by including defendant within the terms of the workmen's compensation act has deprived it of such immunity, citing *Benson* v. *State Hospital Commission,* 316 Mich. 66. The *Benson Case* is not in point inasmuch as it involved an action brought against the State under the court of claims act, Act No. 135, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 13862–1 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 27.3548[1] *et seq.*), and the construction of section 24 of that act as amended by Act No. 237, Pub. Acts 1943 (Comp. Laws Supp. 1943,

§ 13862–24, Stat. Ann. 1944 Cum. Supp. § 27.3548 [24]), which waived the defense of governmental immunity in certain cases brought before the court of claims. That act never had application to claims for compensation brought before the compensation commission of the department of labor and industry. See *Rogers* v. *Kent Board of County Road Commissioners,* 319 Mich. 661, 668, decided on rehearing January 5, 1948. Furthermore, said section 24 of the act as thus amended in 1943 was expressly repealed by Act No. 87, § 2, Pub. Acts 1945 (Stat. Ann. 1947 Cum. Supp. § 27.3548 [42]), and was no longer in effect when the cause of action in the instant case, if any, arose. The matter of governmental immunity is irrelevant here, the question before us being whether the legislature may, constitutionally, apply the workmen's compensation act to employees of the State board of agriculture.

Mr. Justice REID bases his conclusion that it is competent for the legislature to impose the provisions of the workmen's compensation act upon the defendant on the theory that it constitutes an exercise of the police power vested solely in the legislature. The people, through the State Constitution, may vest the powers of State government or limit them where and as they will, consistent with the guarantee contained in article 4, § 4, of the Constitution of the United States. As said in *Clements* v. *McCabe,* 210 Mich. 207:

"It is beyond question that, when the people of this State adopted their Constitution, police power was placed in the legislature, *except as distinctly reserved or conferred elsewhere.*"

In the field of "general supervision of the college and the direction and control of all agricultural college funds," the people have "distinctly reserved or conferred elsewhere" than in the legislature the

power to supervise, direct or control, and by the Constitution itself have barred legislative intrusion.

*Wood* v. *City of Detroit,* 188 Mich. 547 (L. R. A. 1916C, 388), relied upon by Mr. Justice REID, is distinguishable. There the defendant city claimed that its constitutionally conferred powers of local self-government were invaded by the legislature's attempt to apply the workmen's compensation act to certain of the city's employees. The Court, referring to article 8, § 21, of the State Constitution authorizing cities and villages to adopt and amend charters and pass laws and ordinances "subject to the Constitution *and general laws of this State,*" said:

"The Constitution of 1909 [1908] has pointed out the extent of the local powers and capacities of cities and villages   *   *   *   thus restricting the power of the legislature to grant or to deny to *particular communities* the enumerated capacities and powers, at will, but it has not   *   *   *   denied the power of the legislature to enact *general laws applicable to cities.*"

The situation in the instant case is different because the powers conferred upon the defendant board of agriculture by the Constitution are not expressly declared to be subject to the general laws of this State. We do not overlook the concluding words in article 11, § 8, that the defendant board "shall perform such other duties as may be prescribed by law." These words do not give the legislature the power to invade the field granted exclusively to the board of agriculture by the Constitution. As was said in *Bauer* v. *Board of Agriculture,* 164 Mich. 415:

"The addition to the last clause of section 8 of the words, 'and shall perform such other duties as may be prescribed by law,' makes it clear that the duties to be prescribed by the legislature are other

than 'the general supervision of the college and the direction and control of all agricultural college funds,' as to which as we held in *Sterling* v. *Regents of University of Michigan, supra,* the State board of agriculture has exclusive supervision and control.''

Plaintiff is apprehensive as to certain suggested consequences were we to hold the defendant ''immune from all legislation.'' Similarly, Mr. Justice Reid writes, ''However, the provision of the Constitution giving the State board of agriculture sole control of the funds of the college does not generally exempt the said board from the great body of general laws of this State.'' To ascribe such immunity to defendant or to hold it thus exempt is not necessary to decision for defendant on the facts before us. Suffice it to say that within the confines of the field of ''general supervision of the college, and the direction and control of all agricultural college funds'' it is the clear intent of the people, as expressed in the Constitution, that the defendant shall exercise exclusive authority therein without legislative intrusion.

I can only conclude that the employment of persons for the prosecution of college business, functions or operations is within defendant's exclusive supervision; that the payment of compensation, from college funds, in the event of personal injury arising out of and in the course of such employment involves an act of direction and control of agricultural college funds which, again, is within the exclusive power of the defendant board; that for these reasons it is not competent for the legislature to impose the workmen's compensation act on the defendant with respect to the type of employment here involved.

The order of the department denying defendant's motion to dismiss and setting the case for hearing on its merits should be set aside and the cause re-

manded to the department for entry of an order granting defendant's motion to dismiss plaintiff's application. No costs, a public question being involved.

BOYLES, NORTH, and CARR, JJ., concurred with DETHMERS, J.