450 Mich. 655 (1996)
W T ANDREW COMPANY, INC
v.
MID-STATE SURETY CORPORATION
Docket No. 101331, (Calendar No. 6).
Supreme Court of Michigan.
Argued January 10, 1996.
Decided March 19, 1996.
Frank & Stefani (by Sidney L. Frank) for the plaintiff.
Wegner & Associates, P.C. (by Wayne G. Wegner and Shane F. Diehl) for the defendant.
RILEY, J.
In this case, we are called upon to determine if a sub-subcontractor is entitled to relief under the public works bond statute, MCL 129.201 et seq.; MSA 5.2321(1) et seq. Specifically, we must decide whether plaintiff, the sub-subcontractor who supplied plumbing materials to another subcontractor on a renovation project at the University of Michigan Dearborn campus can collect as a claimant under the public works bond statute. We conclude that although the University of Michigan is a constitutionally created entity, plaintiff is entitled to relief.
I
In May of 1989, the University of Michigan *657 decided to renovate buildings at its Dearborn campus. In order to facilitate this project, it hired A.Z. Shmina & Sons, a general contracting firm. Shmina secured its work by providing a labor and materials payment bond which it obtained through Cadillac Insurance Company. Cadillac, however, went into receivership in January of 1990. The Michigan Commissioner of Insurance responded by assigning the bond to defendant Mid-State Surety Corporation. Defendant assumed all the rightful liabilities that Cadillac had under the bond. Specifically, the bond provided that Shmina and Cadillac were liable only to the parties who contracted directly with Shmina.
Shmina retained several different subcontractors to perform the renovations. One of the subcontractors was the Marino Mechanical Contractor Company.[1] Marino in turn contracted with plaintiff, the W.T. Andrew Company, to provide plumbing, heating, and air conditioning materials. During the construction period, Marino experienced financial difficulties. Consequently, it defaulted on its obligations to Shmina and plaintiff. Shmina was able to recover the amount of credit Marino had posted. However, plaintiff, as a supplier of materials to Marino, remained unpaid.
On March 24, 1992, plaintiff brought this action against defendant and Marino in Wayne Circuit Court, claiming approximately $70,000 as the unpaid balance.[2] Although admitting that it had no direct contact with Shmina, plaintiff argued that it was entitled to recover from defendant under the public works bond statute, MCL 129.201 et seq.; MSA 5.2321(1) et seq. The Wayne Circuit Court *658 granted summary disposition for plaintiff and a judgment was entered against defendant in the amount of $78,645.63. Defendant subsequently appealed, and, on October 20, 1994, the Court of Appeals reversed and remanded.[3] The Court of Appeals directed the trial court to enter an order of summary disposition on behalf of Mid-State. Plaintiff petitioned this Court for leave to appeal, and leave was granted on September 20, 1995.[4]
II
MCL 129.201; MSA 5.2321(1) states that a performance and payment bond must be provided by a principal contractor before construction can begin on any public building project exceeding $50,000 in value.
Before any contract, exceeding $50,000.00 for the construction, alteration, or repair of any public building or public work or improvement of the state or a county, city, village, township, school district, public educational institution, other political subdivision, public authority, or public agency hereinafter referred to as the "governmental unit," is awarded, the proposed contractor, hereinafter referred to as the "principal contractor," shall furnish at his or her own cost to the governmental unit a performance bond and a payment bond which shall become binding upon the award of the contract to the principal contractor. [Emphasis added.]
MCL 129.202; MSA 5.2321(2) and MCL 129.203; MSA 5.2321(3) go on to enumerate the purpose behind the performance and payment bonds:
The performance bond shall be in an amount *659 fixed by the governmental unit but not less than 25% of the contract amount, conditioned upon the faithful performance of the contract in accordance with the plans, specifications and terms thereof. The bond shall be solely for the protection of the governmental unit awarding the contract. [MCL 129.202; MSA 5.2321(2).]
The payment bond shall be in an amount fixed by the governmental unit but not less than 25% of the contract amount solely for the protection of claimants, as defined in section 6, supplying labor or materials to the principal contractor or his subcontractors in the prosecution of the work provided for in the contract.[[5]] [MCL 129.203; MSA 5.2321(3) (emphasis added).]
MCL 129.201; MSA 5.2321(1) is designed to be "remedial in nature and, therefore, should be liberally construed." Adamo Equipment Rental Co v Mack Development Co, Inc, 122 Mich App 233, 236; 333 NW2d 40 (1982), citing Wallich Lumber Co v Golds, 375 Mich 323; 134 NW2d 722 (1965). The Legislature adopted MCL 129.201; MSA 5.2321(1) to protect contractors and materialmen in the public sector to ensure that they do not suffer injury when other contractors default on their obligations. Without this legislation the contractors and materialmen "were denied the security afforded when the identical work or materials were provided to the private sector." Adamo Equipment, supra at 236.
In the present case, Shmina, as the principal contractor, provided a bond that defined a "claimant" *660 as an individual or entity having a direct contract with the principal contractor.
A claimant is defined as one having a direct contract with the Principal, for labor, material, or both, used in the performance of the Contract; labor and material does not include water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract.
Under the language of this bond, plaintiff could not meet the definition of a claimant because it never entered into a direct contract with the principal, Shmina. The only contract that plaintiff had was with Marino, a subcontractor. Plaintiff, however, maintains that it is entitled to recovery because it meets the definition of a claimant under MCL 129.206; MSA 5.2321(6) of the public works bond statute. (See n 5.) This entire argument hinges on whether MCL 129.201; MSA 5.2321(1), which sets out the bond requirement under the public works bond statute, is applicable.
The Court of Appeals examined this issue and found that MCL 129.201; MSA 5.2321(1) was not applicable. In order to support this conclusion the Court of Appeals relied on Weinberg v Univ of Michigan Regents, 97 Mich 246; 56 NW 605 (1893). In Weinberg, the plaintiff brought suit against the Regents of the University of Michigan in order to recover the value of materials furnished to one of the subcontractors during the construction of the university's hospital. The basis of plaintiff's claim was that the regents were negligent in not requiring a bond for the project. This Court found that the University of Michigan was a constitutionally created entity and, as such, could not have its property affected without the consent of the regents. Hence, the action could not be maintained.
*661 The Court of Appeals analysis also relied on William C Reichenbach Co v Michigan, 94 Mich App 323; 288 NW2d 622 (1979), for support. In Reichenbach, Michigan State University entered into a construction contract with the Ackerman Construction Company, who subcontracted a portion of the project to Reichenbach. Reichenbach, however, was never fully compensated for its services. Consequently, Reichenbach brought an action against the State of Michigan and the Michigan State University Board of Trustees, seeking recovery of the amount owed. Reichenbach alleged that Michigan State University's failure to compel Ackerman to provide a performance and payment bond constituted negligence. Defendant argued that even though 1963 PA 213 required that a performance and payment bond be obtained before construction, the act was not applicable to it. The Court found:
Thus we hold that the term "public educational institution," as that term is used in the performance bonding statute, applies to only those colleges and universities whose governing boards are not created in the constitution. Hence, the lower court erred in holding the performance bonding statute applicable to defendants. The defendant board of trustees had no obligation to secure a performance bond from the principal contractor and, thus, plaintiff cannot maintain this action in negligence for their failure to do so. [Id. at 336.]
This decision was based on the fact that the Michigan Constitution, under article 8, § 5, gave complete control and management ability over the university's affairs to the trustees.
These constitutional provisions have been interpreted by Michigan appellate courts to give to the *662 trustees entire control and management over University affairs; including the management of property and expenditure of funds to the exclusion of all other departments of the state. [Reichenbach, supra at 335.]
III
The University of Michigan is constitutionally created and its board of regents possesses complete power over financial decisions affecting the university.[6] However, we conclude that MCL 129.201; MSA 5.2321(1) does not affect the University of Michigan financially, nor does it interfere with its educational autonomy. Instead, it serves as an exercise of the Legislature's police power to protect the interests of contractors and materialmen in the public sector. See Adamo Equipment, supra at 236. Consequently, the statute and its definition *663 of "claimant" applies.[7] We reverse the Court of Appeals decision that plaintiff is not entitled to a remedy as a claimant under MCL 129.201; MSA 5.2321(1).
In order to support this conclusion, we examine Univ of Michigan Regents v Employment Relations Comm, 389 Mich 96; 204 NW2d 218 (1973). In Regents, this Court was presented with a group of interns, residents, and postdoctoral fellows connected with the University of Michigan Hospital. These individuals formed an association that attempted to bargain with the university over compensation. The university refused to recognize the association, arguing that it had a right to determine compensation unilaterally. This Court noted that even though the framers of the constitution intended to provide autonomy to the university it was not immune from all laws:
The desires of the framers of the 1850 and subsequent constitutions to provide autonomy to the Board of Regents in the educational sphere have been protected by our Court for over a century. This concern for the educational process to be controlled by the Regents does not and cannot mean that they are exempt from all the laws of the state. [Id. at 107.]
This Court, then, unanimously concluded that the interns and residents did have a right to organize.
We hold that interns, residents and post-doctoral fellows may be employees and have rights to organize under the provisions of PERA [public employees relations act, MCL 423.201 et seq.; MSA *664 17.455(1) et seq.] without infringing on the constitutional autonomy of the Board of Regents. [Id. at 108.]
Although the association could bargain with the university in regard to compensation, this Court noted that other categories would be off limits.
For example, the Association clearly can bargain with the Regents on the salary that their members receive since it is not within the educational sphere. While normally employees can bargain to discontinue a certain aspect of a particular job, the Association does not have the same latitude as other public employees. For example, interns could not negotiate working in the pathology department because they found such work distasteful. If the administrators of medical schools felt that a certain number of hours devoted to pathology was necessary to the education of the intern, our Court would not interfere since this does fall within the autonomy of the Regents under Article 8, § 5. [Id. at 109.]
This decision closely parallels the facts presented here. Much as in Regents, this Court is asked to impose a legislative constraint on the university. However, this constraint, which requires that bonds be posted before construction begins on university projects, imposes a lesser intrusion than the decision in Regents. The Court's decision in Regents imposed a potentially far-reaching financial effect on the university because the association represented a large number of interns and residents who were paid by the university. In the present case, however, the application of MCL 129.201; MSA 5.2321(1) does not impose the same form of financial burden on the university. Because the principal contractor is the entity saddled with the obligation to provide a bond, the *665 university suffers little financial effect. The simple reality is that the facts presented in this case are less onerous on the university. As a result, we find that Regents is directly relevant and controlling on the case at hand.
Furthermore, we find that this Court's decision in Regents demonstrates that Weinberg has been displaced. In Regents, supra at 108, this Court unanimously relied on Branum v Univ of Michigan Bd of Regents, 5 Mich App 134, 138-139; 145 NW2d 860 (1966), quoting:
It is the opinion of this Court that the legislature can validly exercise its police power for the welfare of the people of this State, and a constitutional corporation such as the board of regents of the University of Michigan can lawfully be affected thereby. The University of Michigan is an independent branch of the government of the State of Michigan, but it is not an island. Within the confines of the operation and the allocation of funds of the University, it is supreme. Without these confines, however, there is no reason to allow the regents to use their independence to thwart the clearly established public policy of the people of Michigan.
It is our opinion that this language implicitly overruled the decision in Weinberg.
We also note that Branum, cited in Regents, relied on Peters v Michigan State College, 320 Mich 243; 30 NW2d 854 (1948). We find the reasoning offered by Justice REID in this opinion persuasive. Plaintiff Robert W. Peters filed an application for benefits arising out of an injury that he suffered during the course of his employment with Michigan State College. The defendant contended that as a constitutional corporation it was not subject to the provisions of the Michigan worker's compensation act, MCL 418.101 et seq.; MSA *666 17.237(101) et seq. In the lead opinion of an evenly divided Court, Justice REID concluded that although the constitution gave the State Board of Agriculture sole control of the college's funds, it did not exempt it from the general laws of the state.[8]
However, the provision of the Constitution giving the State board of agriculture sole control of the funds of the college does not generally exempt the said board from the great body of general laws of this State. [Id. at 248.]
Justice REID went on to note that the worker's compensation act was designed to promote the welfare of the people of the state.[9]
We find that the workmen's compensation act is a valid constitutional exercise of the power of the legislature even when it makes necessary the expenditure of agricultural college funds in the compensation of employees under the terms and within the provisions of the workmen's compensation act.
The act is approved as a piece of legislation aimed not at the defendant alone, nor against any of the activities of the defendant of a nature peculiar to defendant. The act is of a broad scope addressed to the subject of the liability of employers in broad fields of employment. The workmen's compensation act does not undertake to change or disturb the educational activities of the defendant board.
The control of State college funds must be considered as given to defendant for the purposes of the particular and peculiar educational activities of the State college, not for the purpose of disturbing *667 the general relationship in this State of employer and employee, nor evading laws enacted to promote the general welfare of the people of this State. Article 11, § 8 ... is not to be construed as withholding from the legislature the authority to make the defendant board liable and subject to the entire workmen's compensation act in question. [Id. at 250-251 (emphasis added).]
Peters is instructive regarding the issue offered in the present matter. Here, as in Peters, this Court is asked to impose an overarching law on a constitutionally created university that has been granted complete power over its finances and curricula by the constitution. Interestingly, the facts in the present matter actually amount to less of an imposition on the university than the situation presented in Peters. In Peters, the application of the worker's compensation act obviously posed a large financial obligation on Michigan State University. It, along with the University of Michigan, employs hundreds of people who are all candidates to file worker's compensation claims, which could invoke thousands of dollars of liability. However, in the present matter, MCL 129.201; MSA 5.2321(1) does not impose any form of financial liability. Instead, it merely states that bonds must be provided in order for construction to begin. Because the principal contractors provide these bonds, this requirement essentially costs the university nothing.[10] Consequently, the university's *668 financial autonomy is preserved. The university's educational autonomy is also preserved because MCL 129.201; MSA 5.2321(1) does not affect its nonfinancial administrative decisions.
In the present case, we are presented with an overarching law. By requiring that bonds be provided when a governmental unit awards a construction contract in excess of $50,000, MCL 129.201; MSA 5.2321(1) protects the university and any subcontractor involved in the project. If a general contractor or a subcontractor defaults on the project, the governmental unit will have economic recourse to guarantee that the project is completed. Furthermore, if a subcontractor provides materials or services and is not paid, it, too, will have economic recourse. It is clear, therefore, that applying MCL 129.201 et seq.; MSA 5.2321(1) et seq. to constitutionally autonomous entities such as the University of Michigan promotes the state's general welfare and, accordingly, is a valid exercise of the Legislature's police power.
IV
Plaintiff's entire action depends on whether the public works bond statute, MCL 129.201 et seq.; MSA 5.2321(1) et seq., is applicable against the University of Michigan. We are persuaded that the answer to this question is yes. Although the University of Michigan is a constitutionally created corporation, the Legislature can impose regulations on it that are designed to provide for the general welfare of society. In this instance, MCL 129.201; MSA 5.2321(1) provides for the welfare of society by guaranteeing that governmental units and people who have furnished services are not injured when contractors default on their obligations. *669 Because MCL 129.201; MSA 5.2321(1) is designed for the benefit of society as a whole, it can be imposed on the University of Michigan through the Legislature's police power where this imposition poses no direct threat to the university's financial autonomy. In this instance, it costs the university nothing to require that those bidding on construction projects with it provide bonds before the contract is awarded. In accordance with this reasoning, we hold that the decisions in Weinberg and Reichenbach, supra, are expressly overruled.
We also hold that plaintiff is a claimant under the public works bond statute. Therefore, the decision of the Court of Appeals is reversed in its entirety. Furthermore, because the issue whether plaintiff provided defendant with timely notice of its claim has not been addressed, we remand the case to the Court of Appeals for resolution of this issue.
BRICKLEY, C.J., and LEVIN, CAVANAGH, BOYLE, MALLETT, and WEAVER, JJ., concurred with RILEY, J.
NOTES
[1] Marino posted a letter of credit equal to $100,000 to secure its work on the project.
[2] On March 27, 1991, plaintiff sent a notice to Cadillac Insurance (the surety), stating that it had supplied materials to Marino.
[3] 209 Mich App 308; 529 NW2d 658.
[4] 450 Mich 866.
[5] "claimant" means a person having furnished labor, material, or both, used or reasonably required for use in the performance of the contract. "Labor and material" includes that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the contract. [MCL 129.206; MSA 5.2321(6).]
[6] Const 1963, art 8, § 5 provides:

The regents of the University of Michigan and their successors in office shall constitute a body corporate known as the Regents of the University of Michigan; the trustees of Michigan State University and their successors in office shall constitute a body corporate known as the Board of Trustees of Michigan State University; the governors of Wayne State University and their successors in office shall constitute a body corporate known as the Board of Governors of Wayne State University. Each board shall have general supervision of its institution and the control and direction of all expenditures from the institution's funds. Each board shall, as often as necessary, elect a president of the institution under its supervision. He shall be the principal executive officer of the institution, be ex-officio a member of the board without the right to vote and preside at meetings of the board. The board of each institution shall consist of eight members who shall hold office for terms of eight years and who shall be elected as provided by law. The governor shall fill board vacancies by appointment. Each appointee shall hold office until a successor has been nominated and elected as provided by law.
[7] We do not hold today that the statute's definition of a claimant imposes a ceiling on the liability that an insurance company can incur. Instead, we hold that the statute's definition of a claimant establishes the minimum liability that an insurer must assume.
[8] Justices BUTZEL, BUSHNELL, and SHARPE concurred in Justice REID's opinion, but they did not sign it. Peters, supra at 251.
[9] Specifically, the worker's compensation act was an exercise of the Legislature's police power for the benefit of the citizens of the state.
[10] Defendant argues that this bonding requirement will cost the university money. Defendant maintains that principal contractors will simply pass this cost on to the university in higher production costs. Defendant, however, offered very little proof to substantiate this claim. It is entirely possible that general contractors bidding on the job will simply absorb the cost of the bond so as to win the project. Moreover, even if it does result in a higher project price for the university plaintiff still does not lose. In both Regents and Peters, high potential fiscal liability was imposed on the university. In this case, such extensive liability will not be incurred.