THE WILLIAM C REICHENBACH COMPANY v STATE OF
MICHIGAN

Docket No. 78-3225. Submitted June 5, 1979, at Lansing.—Decided
December 18, 1979.

On July 20, 1969, Michigan State University signed a contract
with Ackerman Construction Company for the renovation of a
dormitory. Ackerman, in turn, subcontracted a portion of the
work to The William C. Reichenbach Company in the amount
of $40,504.80. On December 2, 1969, MSU made its final pay-
ment to Ackerman in the sum of $50,200. Ackerman then
deposited this check in its account at the Bank of Lansing and
simultaneously made a check out to Reichenbach for
$20,504.80, the amount due and owing under the subcontract.
However, the bank refused to honor the check to Reichenbach
since the bank had attached Ackerman's account and applied
the entire amount to Ackerman's indebtedness to the bank.
Subsequently, Reichenbach brought an action in the Court of
Claims against the State of Michigan and the Michigan State
University Board of Trustees seeking recovery of the amount
owed to plaintiff by Ackerman, alleging that MSU's failure to
compel Ackerman to supply a performance and payment bond
was negligence which was the proximate cause of the plaintiff's

REFERENCES FOR POINTS IN HEADNOTES

[1] 51 Am Jur 2d, Limitation of Actions § 399.
  72 Am Jur 2d, States, Territories, and Dependencies §§ 9, 87.
[2] 51 Am Jur 2d, Limitation of Actions §§ 135, 136.
[3] 5 Am Jur 2d, Appeal and Error §§ 399, 820.
[4] 28 Am Jur 2d, Estoppel and Waiver §§ 1, 27.
[5] 17 Am Jur 2d, Contractors' Bonds §§ 1, 2, 47, 114, 118.
[6] 15A Am Jur 2d, Colleges and Universities § 35.
[7] 15A Am Jur 2d, § 5.
[8] 17 Am Jur 2d, Contractors' Bonds § 5.
[9] 15A Am Jur 2d, Colleges and Universities § 39.
  57 Am Jur 2d, Municipal, School, and State Tort Liability,
  57 Am Jur 2d, §§ 24 et seq., 69 et seq.
  72 Am Jur 2d, States, Territories, and Dependencies §§ 118, 119.
  Waiver or estoppel of public school or institution of higher learning
  to assert immunity from tort liability. 86 ALR2d 524.

financial injury. MSU raised a series of defenses in response, including governmental immunity. Initially, the lower court rejected all of MSU's arguments. However, the Court of Claims, Julian E. Hughes, J., subsequently reversed its decision with respect to governmental immunity and granted judgment for defendants. Plaintiff appeals, alleging that 1) plaintiff's claim was not barred by the statute of limitations, 2) plaintiff was not estopped from recovering from the Michigan State University Board of Trustees under the facts of this case, 3) the statute which requires a contractor to furnish a performance or payment bond before a public educational institution may award a contract for repair of a public building was applicable to MSU, and 4) the plaintiff's claim was not barred by governmental immunity. *Held:*

1. State supported colleges and universities are within the jurisdiction of the Court of Claims. Claims against the state, if they are to be heard in the Court of Claims, must be filed within three years after the claim accrues. The plaintiff's claim was subject to a three-year limitations period, not a one-year period as claimed by defendants. The plaintiff's claim accrued on the date that the bank refused to honor the check. Since plaintiff filed suit within three years of that date, the action was timely filed.

2. The trial court's conclusion that the plaintiff was not estopped from asserting its claim was not clearly erroneous. There was nothing in the facts of the case, as stipulated to by the parties, that tended to show that there was any contact between the plaintiff and the defendants regarding the manner in which the prime contractor was to be paid by the defendants. Thus there is no indication that the defendants relied upon any statements or actions of the plaintiffs when tendering final payment to the prime contractor.

3. At the time that the plaintiff's cause of action arose, there was a statute in effect which required a principal contractor to furnish a performance or payment bond before a public educational institution, among others, could award a contract exceeding $5,000 for the repair of any public building or public work. However, Michigan State University is a corporation established by the Michigan Constitution. As such, management over university affairs, including the management of property and expenditure of funds, is the sole province of the MSU trustees. The Legislature may not interfere with the trustees' management of the University. Thus, the term "public educational institution", as that term is used in the performance bonding statute, applies only to those colleges and universities

whose governing boards are not created in the constitution. The statute was inapplicable to Michigan State University and there was no duty imposed upon the board of trustees to secure a bond from the principal contractor. Plaintiff cannot maintain an action in negligence for failure to do so.

4. The performance bond statute contains no express waiver of the defense of governmental immunity to tort claims, nor is a waiver of such defense a necessary inference from the statute. The defense of governmental immunity was not waived. The recent Supreme Court precedent doing away with the doctrine of common-law governmental immunity was stated to be prospective only with the exception of the case in which the concept was struck down and any cases then pending in which an express challenge to the defense of common-law governmental immunity had been made and preserved. In the present case, defendants timely raised the defense and, since plaintiff did not challenge the validity of this defense and since this case would otherwise require retroactive application of the case striking down the doctrine, plaintiff has waived his right to challenge this defense on appeal.

Affirmed in part and reversed in part.

1. LIMITATION OF ACTIONS — COURT OF CLAIMS — CLAIMS AGAINST STATE — STATUTES.

Claims against the state, if they are to be heard in the Court of Claims, must be filed within three years after the claim first accrues (MCL 600.6452[1]; MSA 27A.6452[1]).

2. TORTS — CAUSE OF ACTION — BREACH OF DUTY — DAMAGES.

A cause of action arising out of tortious injury to a person accrues when all of the elements of the cause have occurred and can be alleged in a proper complaint; these elements are four in number: (1) the existence of a legal duty by defendant toward plaintiff, (2) the breach of such duty, (3) a proximate causal relationship between the breach of such duty and the injury to the plaintiff, and (4) the plaintiff must have suffered damages.

3. APPEAL AND ERROR — FINDINGS OF FACT — TRIAL COURTS — COURT RULES.

A trial court's findings of fact may not be set aside unless they are found to be clearly erroneous; a finding is clearly erroneous where the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed (GCR 1963, 517.1).

4. ESTOPPEL — DEFINITIONS — WORDS AND PHRASES.

Estoppel arises where a party by representations, admissions or silence intentionally or negligently induces another party to believe facts and the other party justifiably relies and acts on this belief and will be prejudiced if the first party is permitted to deny the existence of the facts.

5. BONDS — CONTRACTORS — SUBCONTRACTORS — PERFORMANCE BONDS — PUBLIC WORKS — STATE HIGHWAY COMMISSION — STATUTES.

The statute which requires bonds for payment by a contractor to all subcontractors and for the payment for all labor performed and materials and certain supplies used in the erection, repairing or ornamenting of public buildings or works has been limited in scope to construction and maintenance contracts of the state highway commission and it no longer applies to contracts for public buildings or other public works (MCL 129.211, 570.101; MSA 5.2321[11], 26.321).

6. COLLEGES AND UNIVERSITIES — CONSTITUTIONAL LAW — CONTROL-LING BOARDS — UNIVERSITY AFFAIRS — COURT OF APPEALS.

The Michigan constitution gives to the controlling boards of the University of Michigan, Michigan State University and Wayne State University, Michigan's constitutionally created university corporations, entire control and management over university affairs, including the management and expenditure of funds to the exclusion of all other departments of the state; although the Legislature may put certain conditions on money that it appropriates for a university, and such conditions are binding if the university's controlling board accepts the money, the conditions may not interfere with the controlling board's management of the university and may be applied only to state appropriated funds (Const 1963, art 8, § 5; Const 1850, art 13, §§ 6-8).

7. COLLEGES AND UNIVERSITIES — CONSTITUTIONAL LAW — PUBLIC POLICY.

The independence of Michigan's constitutionally created university corporations will not be permitted to thwart clearly established public policy in this state.

8. COLLEGES AND UNIVERSITIES — PUBLIC EDUCATIONAL INSTITUTION — WORDS AND PHRASES — CONSTITUTIONAL LAW.

The term "public educational institution", as that term is used in a performance bonding statute, applies to only those colleges

and universities whose governing boards are not created in the constitution.

9. TORTS — GOVERNMENTAL IMMUNITY — WAIVER.

Generally speaking, the defense of governmental immunity may be waived only where it is allowed by express statutory enactment or by necessary inference from a statute.

*Doyle, Carruthers, Hess & Ralls, P.C.,* for plaintiff.

*Anderson, Carr & Street,* for defendants.

Before: DANHOF, C.J., and V. J. BRENNAN and H. R. CARROLL,* JJ.

H. R. CARROLL, J. This case arises out of a contract signed by Michigan State University on July 20, 1969, with Ackerman Construction Company for the renovation of one of its dormitories. Ackerman, in turn, subcontracted a portion of the work to the plaintiff in the amount of $40,504.80. On December 2, 1969, the University made its final payment to Ackerman in the sum of $50,200. Ackerman then deposited the check in its account at the Bank of Lansing and simultaneously made a check out to Reichenbach for $20,504.80, the amount due and owing under the subcontract. However, the bank refused to honor the check since it had attached the total amount of Ackerman's account and applied the proceeds to Ackerman's indebtedness to the bank. On October 10, 1972, Reichenbach filed suit in the Court of Claims alleging that the University's failure to compel Ackerman to supply a performance and payment bond was negligence which was the proximate cause of plaintiff's financial injury. The University raised a series of collateral defenses in response,

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

including governmental immunity. Initially, the lower court rejected all of the University's arguments. However, on May 9, 1978, the Court of Claims reversed its decision with respect to governmental immunity. Plaintiff appeals as of right.

At trial, the University raised the following defenses: (1) plaintiff's claim was barred by the statute of limitations; (2) plaintiff was estopped from recovering from the Michigan State University Board of Trustees under the facts of this case; (3) the provisions of 1963 PA 213 were inapplicable to the University; and (4) plaintiff's claim was barred by governmental immunity. All of these matters are raised as issues on appeal. We will consider them *seriatim.*

I. *Statute of limitations.*

The Michigan State University Board of Trustees is a corporate entity that derives its authority from the Michigan Constitution. Const 1963, art 8, § 5. State-supported colleges and universities are within the jurisdiction of the Court of Claims. *Fox v Board of Regents of the University of Michigan,* 375 Mich 238; 134 NW2d 146 (1965), *Doan v Kellogg Community College,* 80 Mich App 316; 263 NW2d 357 (1977), *Kiluma v Wayne State University,* 72 Mich App 446; 250 NW2d 81 (1976). State law provides that claims against the state, if they are to be heard in the Court of Claims, must be filed "within 3 years after the claim first accrues". MCL 600.6452(1); MSA 27A.6452(1). Because the instant suit was properly brought in the Court of Claims, the three year statute of limitations is applicable.

The defendant argues that a one-year statute of limitations is more appropriate relying upon the language found in the payment-bond statute. In pertinent part that statute reads:

"An action instituted on the payment bond shall be brought only in the appropriate court in the political subdivision in which the contract was to be performed. No action shall be commenced after the expiration of 1 year from the date on which final payment was made to the principal contractor." MCL 129.209; MSA 5.2321(9).

The statute is clearly not applicable since, by its very terms, it concerns actions instituted on a payment bond. In the instant case, no payment bond was ever filed. Moreover, plaintiff's suit is grounded in negligence, not in any rights arising from a payment bond.

There remains to be determined on what date the statute of limitations began to run. *Williams v Polgar,* 391 Mich 6; 215 NW2d 149 (1974), reaffirmed the following as a guideline in making that determination:

" 'In the case of an action for damages arising out of tortious injury to a person, the cause of action accrues when all of the elements of the cause of action have occurred and can be alleged in a proper complaint.

" 'Those elements are four in number:

" '(1) The existence of a legal duty by defendant toward plaintiff.

" '(2) The breach of such duty.

" '(3) A proximate causal relation between the breach of such duty and an injury to the plaintiff.

" '(4) The plaintiff must have suffered damages.' " *Id.,* at 25, quoting from *Connelly v Paul Ruddy's Equipment Repair & Service Co,* 388 Mich 146, 150; 200 NW2d 70 (1972).

We find that the statute of limitations began to run on December 2, 1969, the date on which plaintiff's check was dishonored by the bank. In particular, on that date, defendants arguably owed a legal duty to plaintiff to protect plaintiff by

requiring the filing of a performance bond (but see issue III, *infra);* there was a proximate causal relationship between the breach and an injury to plaintiff; and on that date, plaintiff suffered injury. Hence, plaintiff's suit, which was initiated on October 10, 1972, was filed timely.

II. *Estoppel.*

Defendants contended before the lower court that plaintiff was estopped from asserting its claim. The Court of Claims rejected that argument:

"So far as the claim of estoppel is concerned, this court fails to find any basis for estoppel within the set of stipulated facts. The arugument *[sic]* is made in the defendant's brief that in some way MSU participated in the pay arrangement between Ackerman and the plaintiff and, relying on such arrangement, issued its check to Ackerman with the knowledge, approval and agreement of the plaintiff. Based on the stipulated facts, this would be sheer speculation. The court agrees with the law cited by the defendant, but fails to find the facts to justify the application of such law."

A trial court's findings of fact may not be set aside unless they are found to be clearly erroneous. GCR 1963, 517.1; *Tuttle v Dep't of State Highways,* 397 Mich 44; 243 NW2d 244 (1976). Our Supreme Court has stated that a finding is clearly erroneous where the reviewing court "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.,* at 46.

Estoppel arises where a party, by representations, admissions or silence, intentionally or negligently induces another party to believe facts, and the other party justifiably relies and acts on this

belief, and will be prejudiced if the first party is permitted to deny the existence of the facts. *Conel Development, Inc v River Rouge Savings Bank,* 84 Mich App 415; 269 NW2d 621 (1978).

Our review of the stipulated facts in this case does not lead us to conclude that the lower court's finding was clearly erroneous. There is nothing in the stipulated facts that tends to show that there was any contact between plaintiff and defendants regarding the manner in which the prime contractor was to be paid by defendants. Thus, there is no indication that defendants relied upon any statements or actions of the plaintiff when tendering final payment to the prime contractor.

III. *Inapplicability of 1963 PA 213.*

Plaintiff argues that state law imposed a duty upon the defendants to require the prime contractor to furnish a payment bond. At the time the events in question occurred, the statute relied upon by the plaintiff read as follows:

"Before any contract, exceeding $5,000.00 for the construction, alteration or repair of any public building or public work or improvement of the state or a county, city, village, township, school district, public educational institution, other political subdivision, public authority or public agency, except the state highway department, hereinafter referred to as the 'governmental unit', is awarded, the proposed contractor, hereinafter referred to as the 'principal contractor', shall furnish at his own cost to the governmental unit a performance bond and a payment bond which shall become binding upon the award of the contract to the contractor. Neither the invitation for bids, nor any person acting, or purporting to act, on behalf of the governmental unit shall require that the bonds be furnished by a particular surety company, or through a particular agent or broker, or through a company, agent or broker in any particular locality." 1963 PA 213, § 1.

Defendants argue that the University is not included within the sweep of the statute's coverage and point to *Weinberg v The Regents of the University of Michigan,* 97 Mich 246; 56 NW 605 (1893), as support for their contention. In that case, defendant had entered into a contract with a William Biggs for the construction of a hospital. *Id.,* at 247-248. Biggs in turn sublet a portion of the contract to John Cusac who then purchased material from the plaintiff. *Id.,* at 248. Although plaintiff furnished the material in question, he did not receive payment. *Id.* As a result, he filed suit alleging negligence on the part of defendant in failing to require a payment bond from Biggs as required by state law. *Id.,* at 249.

The statute before the Supreme Court in *Weinberg* is not the same statute that is before us in the present case. The statutory provisions before the Court in *Weinberg,* 1885 PA 45, provided:

"That when public buildings or other public works or improvements are about to be built, repaired, or ornamented under contract, at the expense of this State, or of any county, city, village, township, or school-district thereof, it shall be the duty of the board of officers, or agents, contracting on behalf of the State, county, city, village, township, or school district, to require sufficient security by bond, for the payment by the contractor, and all sub-contractors, for all labor performed, or materials furnished in the erection, repairing, or ornamenting of such building, works, or improvements."

This statute has been retained by Michigan in a substantially similar form. MCL 570.101; MSA 26.321. However, subsequent to the decision in *Weinberg,* this statute has been limited in scope to construction and maintenance contracts of the state highway commission. It no longer applies to

contracts for public buildings or other public works. See MCL 129.211; MSA 5.2321(11).

In *Weinberg,* the Court held that this statute did not cover the University because it was not under the control and management of the Legislature. *Weinberg v The Regents of the University of Michigan, supra,* 253. Instead, the Court noted that the general supervision of the University was vested in the regents. See Const 1850, art 12, §§ 7, 8. The Court then concluded as follows:

"The University and the school-district are both provided for in the same article of the Constitution. Why should the Legislature mention the school-district in this statute, and leave out the University, if it was its intention to include the latter? The University is the property of the people of the State, and in this sense is State property so as to be exempt from taxation. *Auditor General v Regents,* 84 Mich 467 [47 NW 440(1890)]. But the people, who are the corporators of this institution of learning, have, by their Constitution, conferred the entire control and management of its affairs and property upon the corporation designated as 'the Regents of the University of Michigan,' and have thereby excluded all departments of the State government from any interference therewith. The fact that it is State property does not bring the Regents within the purview of the statute. The people may, by their Constitution, place any of its institutions or property beyond the control of the Legislature.

\* \* \*

"These considerations lead me to the conclusion that the Regents are not included in this act, and that the judgment should be reversed, and judgment entered in this Court for the defendants." *Weinberg, supra,* 254-255.

The Court of Claims, adopting its previous opinion in the matter, found the statute in the instant case distinguishable from that reviewed in *Wein-*

*berg* in that the former specifically included "public educational institution" while the latter did not. The court found Michigan State University to be such an institution under Const 1963, art 8, § 4.

The Court of Claims further held that the fact that defendants were a constitutional entity did not exempt them from complying with the performance bonding statute because that statute served a valid public purpose:

"Defendant further claims that M.S.U. is a Constitutional entity and therefore the legislature has no power to impose such a bonding requirement on contracts let by that educational institution. Defendant conceeds *[sic]* that the legislature has legislative power regarding the university provided the legislation falls within 'police power'—however, he claims that this particular Act does, not fall within valid exercise of 'police power'. 'Police power', of course, includes and is limited to legislation concerning 'health, safety, welfare and morals of the people'. This court does not agree with the defendant. Regardless of which point of view one takes, the conclusion seems inescapable that the 'welfare of the people' is directly involved. From the standpoint of the sub-contractors, sub-sub contractors, materialmen, laborers, etc., it is in the best interest of the public at large that they be paid for services performed and material delivered. It is obviously not in the best interest of the public to either encourage the lengthing *[sic]* of welfare rolls nor invite an increase in the size of the dockets of the bankruptcy courts. From the standpoint of the people (as represented by the State) it is certainly to their best interests that sub-contractors materialmen, laborers, etc., be encouraged to provide materials and services as cheaply as possible—both the availability and price of goods and services are directly affected by the certainty (or lack of certainty) of payment. In short, it is this court's opinion that the legislature is well within the policy established by *Peters v Michigan State College,* 320 Mich 243 [30 NW2d 854 (1948)], and

*Branum v Board of Regents,* 5 Mich Appeals 134 [145 NW2d 860 (1966)]."

With this conclusion we disagree. Michigan State University is a corporation established by the constitution of this state. Const 1963, art 8, § 5. Its board of trustees, defendant in the instant case, have general supervisory power over the University and control and direction over expenditures from the University's funds. *Id.* It should be noted that these constitutional provisions are similar to those in the 1850 constitution that concerned the University of Michigan and were before the Court in *Weinberg, supra.* See Const 1850, art 13, §§ 6-8.

These constitutional provisions have been interpreted by Michigan appellate courts to give to the trustees entire control and management over University affairs; including the management of property and expenditure of funds to the exclusion of all other departments of the state. *Board of Regents of the University of Michigan v Auditor General,* 167 Mich 444; 132 NW 1037 (1911), *Sterling v Regents of University of Michigan,* 110 Mich 369; 68 NW 253 (1896). Although the Legislature may put certain conditions on money that it appropriates for the University, and such conditions are binding if the trustees accept the money, the conditions may not interfere with the trustees' management of the University and may be applied only to state appropriated funds. *State Board of Agriculture v Auditor General,* 226 Mich 417; 197 NW 160 (1924), *State Board of Agriculture v Auditor General,* 180 Mich 349; 147 NW 529 (1914). We will interfere with University control only if the proposed expenditure violates our constitution or public policy. *Sprik v Regents of the University of Michigan,* 43 Mich App 178; 204 NW2d 62 (1972),

*aff'd on other grounds* 390 Mich 84; 210 NW2d 332 (1973).

On occasion, the appellate courts of this state have limited the power of constitutionally created university corporations. See *e.g., Regents of the University of Michigan v Employment Relations Comm,* 389 Mich 96; 204 NW2d 218 (1973) (University of Michigan held to be a public employer subject to the provisions of the public employment relations act, MCL 423.201 *et seq.;* MSA 17.455[1] *et seq.), Branum v Board of Regents of the University of Michigan,* 5 Mich App 134; 145 NW2d 860 (1966) (Legislature could validly waive the university's governmental immunity). The independence of such universities will not be permitted to "thwart the clearly established public policy" in this state. *Id.,* at 139. We conclude that the payment bonding statute does not represent "a clearly established public policy" in this state. Moreover our conclusion is buttressed by the Court's decision in *Weinberg v The Regents of the University of Michigan, supra,* which we find directly on point. Thus we hold that the term "public educational institution", as that term is used in the performance bonding statute, applies to only those colleges and universities whose governing boards are not created in the constitution. Hence, the lower court erred in holding the performance bonding statute applicable to defendants. The defendant board of trustees had no obligation to secure a performance bond from the principal contractor and, thus, plaintiff cannot maintain this action in negligence for their failure to do so.

IV. *Governmental immunity.*

Plaintiff's sole argument in the lower court proceeding was that in passing the payment bond statute the Legislature implicitly allowed waiver

of the doctrine of governmental immunity. The Court of Claims rejected that argument. Generally speaking, governmental immunity may be waived only where it is allowed by express statutory enactment or by necessary inference from a statute. *Benson v State Hospital Comm,* 316 Mich 66; 25 NW2d 112 (1946), *McNair v State Highway Dep't,* 305 Mich 181; 9 NW2d 52 (1943). Our reading of the statute discloses neither.

Defendants also argue on appeal that they should be immune from liability under the doctrine of common-law governmental immunity. In *Pittman v City of Taylor,* 398 Mich 41; 247 NW2d 512 (1976), it was held that the defense of common-law governmental immunity would no longer be effective in Michigan. However, the Supreme Court stated that its ruling in *Pittman* would be prospective only, "with the exception of the instant case and any cases now pending in which an express challenge to the common-law defense of governmental immunity had been made and preserved". *Id.,* at 50. Although defendants asserted the defense of common-law governmental immunity below, plaintiff did not challenge the validity of this defense. Therefore, under the holding in *Pittman,* plaintiff has waived on appeal any challenge to this defense. Accordingly, the Court of Claims decision on this issue is affirmed.

Affirmed in part and reversed in part.