CLARKSON v JUDGES' RETIREMENT SYSTEM

Docket No. 102620. Submitted June 15, 1988, at Lansing. Decided November 8, 1988. Leave to appeal applied for.

S. James Clarkson was an elected judge of the Forty-sixth District Court from January 1, 1969, to December 31, 1978, when he left that court due to a failure to be reelected. Upon completion of his term in office, Clarkson had fourteen years of service credits in the Judges' Retirement System (ten years as a judge, two years as a legislator and two years in military service). Thereafter Clarkson sat as a judge intermittently for brief periods at the request of the State Court Administrator's Office. In March, 1983, Clarkson wrote a letter to the executive secretary of the Judges' Retirement System, inquiring whether his retirement benefits would be based on his final salary as an elected judge or upon the final salary he received while sitting at the request of the State Court Administrator's Office. In April, 1985, Clarkson received a communication from a functionary with the Judges' Retirement System which indicated that, since Clarkson had turned sixty, he was entitled to a deferred annuity of $20,177.01 per year, or $17,003.37 per year if he elected "option A," and that the annuity as computed was based upon the 1984 salary of a district court judge and fourteen years and one month of service credits. On October 30, 1985, the Attorney General, in response to an inquiry by the Judges' Retirement System, issued an opinion which held that retirement benefits under this type of circumstance should be based on the final salary as an elected judge and that it was improper to tack together periods of service as a visiting judge of less than one month for the purpose of computing service credits. Accordingly, Clarkson was informed by the Judges' Retirement System that, using his final salary as an elected judge and the fourteen years of service credits he had if tacking were not allowed, he was entitled to an annuity of $15,270.75

REFERENCES

Am Jur 2d, Judges §§ 9-11, 248 et seq.

Am Jur 2d, Pensions and Retirement Funds §§ 1695 et seq.

See the Index to Annotations under Judges; Pension and Retirement.

per year, or $12,868.81 per year under "Option A." Clarkson petitioned for administrative review, claiming that the Attorney General's opinion was in error and that he had delayed his retirement on the basis of the representations concerning the retirement benefits that would be received by a judge who sat as a visiting judge. The hearing officer denied Clarkson's request for review, holding that the Attorney General had properly construed the statute and that a hearing officer had no authority to rule on the estoppel claim. The Judges' Retirement Board denied Clarkson's request for recomputation of benefits. Clarkson appealed to the Oakland Circuit Court. The court, Robert L. Templin, J., affirmed, agreeing that the Attorney General's interpretation of the intent of the statute was correct and finding no detrimental reliance by Clarkson which would mandate the application of the doctrine of estoppel. Clarkson appealed.

The Court of Appeals *held:*

1. The Legislature clearly intended the term "final salary" to refer to the last annual salary a judge received as an elected or appointed judge. Sitting at the request of the State Court Administrator's Office does not constitute sitting as an elected or appointed judge. Accordingly, pension benefits should be based upon the last salary as an elected judge.

2. The prior practice of tacking fractional month periods was contrary to the clear language of the statute.

3. The detrimental reliance necessary to evoke estoppel was not shown.

Affirmed.

1. PENSIONS — JUDGES RETIREMENT ACT — FINAL SALARY.

The term "final salary" as used in the Judges' Retirement Act means the last annual salary as an elected or appointed judge; a retired judge who sits temporarily as a judge at the request of the State Court Administrator's Office is neither an elected nor an appointed judge during those periods; accordingly, the salary earned during those periods while sitting at the request of the State Court Administrator's Office does not constitute the retired judge's final salary for the purpose of the judge's retirement system (MCL 38.802[m], 38.813a[1], 38.814[2]; MSA 27.125[2][m], 27.125[13.1][1], 27.125[14][2]).

2. PENSIONS — JUDGES RETIREMENT ACT — SERVICE CREDIT.

Service credit under the Judges' Retirement Act may not be given for any month, other than the month in which the judge retires, in which the judge receives less than one month's salary; fractional portions of months worked may not be tacked

for the purpose of establishing service credit under the Judges' Retirement Act (MCL 38.810[1]; MSA 25.125[10][1]).

3. PENSIONS — JUDGES RETIREMENT ACT — ESTOPPEL.

The judges' retirement system is not estopped from paying a judge's retirement annuity in accordance with statutory mandate by reason that the judge was erroneously informed that the annuity would be for a greater amount where there is no showing that the judge relied to his prejudice on the misinformation.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *William P. Hampton* and *Lanie Anderson*), for petitioner.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Walter V. Kron,* Assistant Attorney General, for respondents.

Before: McDONALD, P.J., and GILLIS and R. L. TAHVONEN,* JJ.

PER CURIAM. Petitioner appeals as of right from the circuit court's order affirming the decision of the Judges' Retirement Board which denied his request for a recalculation of service credits and retirement benefits. We affirm.

Petitioner was born on February 9, 1925, and was later elected as a judge for the Forty-sixth District Court. Petitioner held that position from January 1, 1969, until December 31, 1978. In 1969, petitioner became a member of the Judges' Retirement System (JRS) in accordance with the Judges' Retirement Act, MCL 38.801 *et seq.*; MSA 27.125(1) *et seq.* When petitioner lost his bid for reelection in 1978, he was fifty-three years old and had accumulated fourteen years of service credits (i.e., ten years as a district court judge, two years as a state representative and two years in military

---

* Circuit judge, sitting on the Court of Appeals by assignment.

service). Thereafter, petitioner served intermittently as a judge at the request of the State Court Administrator's Office (SCAO). In 1979, petitioner signed a new agreement becoming a member of the JRS.

On March 23, 1983, petitioner wrote a letter to Mr. Richard Beers, the JRS's executive secretary, inquiring whether his retirement benefits would be based upon his final salary as an elected judge or upon his final salary as a judge sitting at the SCAO's request. Petitioner did not receive a response.

However, on April 5, 1985, Patricia Nichols of the JRS wrote petitioner a letter confirming their prior telephone conversation. Therein, Ms. Nichols indicated that petitioner was entitled to a deferred annuity as he had turned sixty years old. Ms. Nichols further indicated that petitioner's retirement benefits would be based upon the 1984 salary of a district court judge. An attachment enclosed with Ms. Nichols' letter, which was entitled "Retirement Allowance Estimate," indicated that petitioner had fourteen years and one month of service credit. Under a straight life annuity allowance petitioner could receive $20,177.01 per year and under option "A" petitioner could receive $17,003.37 per year. The difference between the options apparently related to the amount to be received by the judge's survivor.

On October 30, 1985, the Attorney General issued an opinion in response to Mr. Beers' letter of inquiry relating to the granting of service credits and computing retirement allowances for persons who ceased being judges and who, thereafter, were assigned by the SCAO to sit as judges for limited periods. OAG, 1985-1986, No 6318, p 159 (October 30, 1985). Beers' letter contained the following example:

A member ceased to be a judge on January 31, 1969, after one month of service as a District Court Judge, and withdrew his contributions. He was authorized by the Supreme Court to serve for a limited period in Recorder's Court for the period July 5, 1977 through September 30, 1977. He again applied and was approved for membership in the Judges' Retirement System. During the period July 5, 1977 to the present he has served as judge for several limited periods on specific assignments in Recorder's Court and District Court. Member contributions were paid on actual days/months served. During 1977 and 1978 he made payment for 9 years, 6 months, prior service as a former municipal judge and repaid his refund of contributions reinstating 1 month of service as a district judge; a total of 9 years, 7 months service credit. He is presently serving for a limited period in another District Court. [*Id.*]

The Attorney General's opinion assumed that the former judge would seek a deferred annuity upon turning sixty years old. *Id.*

Beers first asked whether MCL 38.811(1); MSA 27.125(11)(1) applied to judges sitting at the SCAO's request. OAG, *supra,* p 160. That statute provides in part:

Beginning January 1, 1983, all duly elected or appointed judges shall become members of this system unless within 30 days from taking office a written notice not to participate in the retirement system is filed with the board.

The Attorney General noted that, before MCL 38.811(1); MSA 27.125(11)(1) was amended in 1982, judges became members of the JRS by signing a written form provided by the JRS within thirty days after they began their official duties. OAG *supra,* p 160. In a 1970 letter to the then-executive secretary of the JRS, the Attorney General opined

that an elected judge who ceased to be a member of the JRS and who was later authorized by the Supreme Court to serve as a judge upon the Court of Appeals was required to make a written application for membership in the JRS within thirty days thereafter if he did, in fact, elect to become a member. *Id.* Moreover, the Attorney General opined that such a person, who elected to become a JRS member, was entitled to service credit for time spent sitting on the Court of Appeals. *Id.*

However, the Attorney General believed that MCL 38.811(1); MSA 27.125(11)(1), as amended in 1982, required a change in his previous interpretation. OAG, *supra,* p 160. Thus, the Attorney General now opined that a former judge who had ceased to be a member of the JRS and who was authorized to sit by the SCAO for a period of thirty-one days or more became a member of the JRS by operation of law unless he or she filed a notice not to participate in the JRS. *Id.* at 161.

Beers also asked whether a judge's retirement benefit should be computed on the salary received at the termination of his or her tenure in office or on the annual salary paid a judge in the court in which he or she served during his or her final SCAO assignment. *Id.* The Attorney General noted that final salary was defined in MCL 38.802(m); MSA 27.125(2)(m) as "the annual rate of salary paid by the state at the time of his or her retirement to a judge . . . ." The Attorney General noted that departure from the literal interpretation of a statute is justified if it " 'would produce an absurd and unjust result and would be clearly inconsistent with the purposes and policies of the act in question,' " OAG, *supra,* p 162, quoting *Salas v Clements,* 399 Mich 103, 109; 247 NW2d 889 (1976). The Attorney General then noted that the purpose of the Judges' Retirement Act was to

induce competent and qualified lawyers to enter into and remain in the judicial service of the state. OAG, *supra,* p 162-163, citing *Hughes v Judges' Retirement Bd,* 407 Mich 75, 94-95; 282 NW2d 160 (1979). The Attorney General then opined that the purpose of the Judges' Retirement Act was "not to confer a windfall increase in retirement benefits upon former judges who accept appointment[s] for short periods of time after they no longer occupy the office to which they were elected." OAG, *supra,* p 163. Because this would be the result of a literal construction of the act, the Attorney General stated that retirement benefits of the former judge in Beers' example must be computed on the basis of the annual salary he received at the end of his tenure as an elected judge. *Id.*

Finally, Beers asked whether MCL 38.810(1); MSA 27.125(10)(1) applied to a judge assigned by the SCAO to sit for less than one month. OAG, *supra,* p 163. That statute provides in part:

> The board shall credit each member with the number of years and months of service to which the member is entitled. The board shall allow service credit for the month in which a member's retirement becomes effective notwithstanding that the member retires from service before the end of the month, but with the provisions [sic] that the member retires from service after the fifteenth of the month. In no other case shall the board allow service credit for any month for which a member receives less than 1 month's salary nor shall more than 1 month of service be credited for all service rendered in a calendar month.

The Attorney General opined that the statute was clear and unambiguous and contained an exception only for members who retired after the fifteenth of the month. *Id.* Thus, the Attorney Gen-

eral stated that a former judge, who was serving an assignment at the SCAO's request and who was a JRS member, could receive service credit for a month only if he or she received the full salary for that month unless he or she retired that month and had received a full salary for the first through the fifteenth day of that month. *Id.* at 164.

In light of the Attorney General's opinion, Ms. Nichols sent petitioner a letter on November 7, 1985, which contained a revised retirement allowance estimate. Consistent with the Attorney General's opinion, petitioner's retirement was based on his final salary as an elected district court judge in 1978 and petitioner received only fourteen years of service credits because each of his SCAO assignments had been for a period of less than one month. As a result, petitioner was entitled to receive a straight life annuity allowance of $15,270.75 per year or $12,868.81 under option "A." Ms. Nichols also enclosed a copy of the Attorney General's opinion with her letter.

Given the significant reduction in his retirement benefits, petitioner wrote Beers another letter, stating that he believed that the Attorney General's opinion did not apply to him because his factual situation was different from the factual situation of the judge described in Beers' letter to the Attorney General. On January 31, 1986, Beers wrote petitioner and stated that the Attorney General's opinion did apply to him.

Petitioner then filed a petition for an administrative hearing, challenging the decision of the JRS to apply the Attorney General's opinion to his situation. Petitioner claimed that the Attorney General's opinion was contrary to the literal language of the Judges' Retirement Act and did not further the act's purpose. In any event, petitioner claimed that he had never withdrawn his accumu-

lated contributions from the JRS unlike the judge described in Beers' letter to the Attorney General. Petitioner noted that, prior to the Attorney General's opinion, the JRS had awarded former judges sitting at SCAO's request retirement benefits based on the member's salary at the time of that assignment and had awarded such judges one month of service credit when their sporadic assignments reached a total of thirty days of service. Petitioner claimed that it was unfair to apply the Attorney General's opinion to judges retiring after its issuance. Petitioner also argued that an increase in retirement benefits and service credits because of the SCAO's assignments furthered the purpose of the act by inducing judges to accept such service and also financially strengthened the JRS because such judges would not withdraw their accumulated contributions therefrom. Finally, petitioner argued that the contract he signed entitled him to retirement benefits based on his final salary as defined in MCL 38.802(m); MSA 27.125(2)(m) and indicated that he had relied on the JRS's interpretation of that statute in delaying his retirement. At the hearing on his petition, petitioner also noted that, in reliance on Betty Murray's, Ms. Nichols' predecessor, representations concerning the retirement benefits a judge who accepted SCAO assignments would receive, had he delayed his retirement. Petitioner maintained that he would have retired prior to the issuance of the Attorney General's opinion if he had not been misinformed by Ms. Murray.

The hearing officer proposed a decision denying petitioner's request for relief, finding that the JRS properly applied the Attorney General's opinion to petitioner's case and that he had no authority to rule on petitioner's claim of estoppel.

Petitioner filed exceptions to the proposed deci-

sion. The Judges' Retirement Board then evaluated petitioner's case and denied his request for recomputation of retirement benefits because his "position is inconsistent with the intent of the Legislature."

Petitioner then appealed to the circuit court. The circuit court agreed with the Attorney General that construing the act literally would be contrary to its purpose and would result in a windfall to petitioner. Moreover, the circuit court rejected petitioner's estoppel claim, finding that petitioner accepted SCAO assignments for seven years before receiving Ms. Nichols' original retirement benefit estimate and that only seven months lapsed between petitioner's receipt of Ms. Nichols' original and revised estimates.

This Court's review of an administrative agency's decision is governed by MCL 24.306(1); MSA 3.560(206)(1) which provides:

> Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:
>
> (a) In violation of the constitution or a statute.
>
> (b) In excess of the statutory authority or jurisdiction of the agency.
>
> (c) Made upon unlawful procedure resulting in material prejudice to a party.
>
> (d) Not supported by competent, material and substantial evidence on the whole record.
>
> (e) Arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion.
>
> (f) Affected by other substantial and material error of law.

See also Const 1963, art 6, § 28.

The parties agree that petitioner is entitled to a deferred annuity pursuant to MCL 38.813a(1); MSA 27.125(13.1)(1), which provides:

A member who ceases to be a judge for any reason other than disability under section 16, retirement, or death, shall be entitled to a deferred annuity. If the member does not withdraw the member's accumulated contributions from the annuity savings fund, and has not less than 8 years of service credited to the member's account, the amount of the deferred annuity shall be equal to 3% of *the member's final salary* multiplied by the number of years and fraction of years service, not to exceed the retirement annuity provided for in section 14; or if the member ceases to be a judge on or after July 1, 1975, and has 12 or more years of service, the member shall be entitled to receive a deferred annuity equal to the retirement annuity provided for in *section 14 based upon the member's final salary.* The member's retirement and the payment of the member's annuity shall begin the first day of the calendar month after the month in which the member files the written application with the board on or after the member's attainment of age 55 years if the member has 18 or more years of service credited to him of which the last 6 years were continuous service, otherwise age 60 years. A member who has 12 or more years of service, but less than 18 years of which the last 6 years were continuous service, shall be entitled to receive a reduced deferred annuity upon attainment of age 55, *the annuity to be computed according to section 14,* reduced by 0.5% of the annuity multiplied by the number of months and fraction of a month the member's age at retirement is under age 60. The member's entitlement to a deferred annuity shall be forfeited if the member withdraws the accumulated contributions from the annuity savings fund. [Emphasis supplied.]

MCL 38.814; MSA 27.125(14) provides in part:

(2) A member who is 60 years of age or older and has 12 or more years of service credited, who has 25 or more years credited of which the last 6 years were continuous service, or who is 55 years of age and has 18 or more years of service credited of which the last 6 years were continuous service, shall be paid an annuity equal to 50% of the member's *final salary* for the first 12 years of service credited to the member's account. In addition, the member's straight life annuity, terminating upon death, shall be increased by 2½% of the member's *final salary* multiplied by each year and fraction of a year of service credited to the member's account not to exceed 4 additional years. Not more than 16 years of service may be used to determine the amount of annuity to be paid.

(3) A member who is 55 years of age and has 12 or more but less than 18 years of service of which the last 6 years were continuous service shall be entitled to receive an annuity as provided in subsection (2), reduced by 0.5% of the annuity multiplied by the number of months and fraction of a month the member's age at retirement is under 60 years of age. [Emphasis supplied.]

As noted above, MCL 38.802(m); MSA 27.125(2)(m) provides in part: " 'Final salary' means the annual rate of salary paid by the state at the time of his or her retirement to a judge . . . ."

Petitioner argues that the definition of final salary contained in MCL 38.802(m); MSA 27.125(2)(m) applies to both MCL 38.813a(1); MSA 27.125(13.1)(1) and MCL 38.814(2); MSA 27.125(14)(2). Petitioner notes that these statutes are unambiguous.

We believe that departure from a literal construction of a statute is justified when such construction would produce an absurd result. *Salas, supra.* In this case, we believe that an absurd result would occur if petitioner, on the basis of a

single assignment from SCAO in 1985, would be entitled to receive an annuity benefit based upon the final salary of a 1985 district court judge. While petitioner argues that such an interpretation encourages judges to accept SCAO assignments after losing reelection, and thereby induces competent judges to remain in the judiciary, we believe that such an interpretation would encourage judges with minimal service to leave the judiciary and later request a SCAO assignment in the year they wished to retire. Thus, we hold that, despite the definition of final salary contained in MCL 38.802(m); MSA 27.125(2)(m), the term final salary means the member's last annual salary as an elected or appointed judge. Petitioner, while sitting at the request of the SCAO, was neither an elected nor an appointed judge. Hence, petitioner's retirement benefits should be based upon the salary he received in 1978, as an elected judge.

We further agree with the Attorney General that MCL 38.810(1); MSA 27.125(10)(1) is unambiguous regarding the allowance of service credit for less than one month's service. The JRS's previous practice of allowing tacking is not supported by the statute and, therefore, was improper. Petitioner is entitled to only fourteen years of service credit.

Petitioner also claims that his vested contract rights were impaired by the Attorney General's interpretation of the above-discussed statutes. We disagree. Petitioner's entitlement to benefits became vested at his retirement, not before. *Hughes, supra.*

Finally, petitioner argues that the circuit court erred when it refused to hold that the JRS should be estopped from claiming that he was not entitled to a deferred annuity based upon the salary of a 1985 district court judge because he relied on Ms.

Nichols' first letter and Ms. Murray's oral representations in deferring his retirement. Estoppel arises where a party, by representations, admissions or silence, intentionally or negligently induces another party to believe facts and the other party justifiably relies and acts on this belief and would be prejudiced if the first party is permitted to deny the existence of the facts. *The William C Reichenback Co v Michigan,* 94 Mich App 323, 330-331; 288 NW2d 622 (1979). We cannot say that petitioner relied on Ms. Murray's oral representations in light of his continued attempts to have the JRS answer his questions. Moreover, Ms. Nichols' letter contained only an estimate of retirement benefits based on a 1984 district court judge's salary, indicating that petitioner's retirement benefits would be based upon his last salary as a SCAO-assigned judge. Seven months later, Ms. Nichols' second letter was sent. Like the circuit court, we are unable to hold that petitioner delayed his retirement for seven years on the basis of a letter received seven months earlier. Instead, we believe that petitioner delayed his retirement for reasons related to Social Security eligibility.

Affirmed.