**DYNAMIC HEATING & PUMPING COMPANY, Plaintiff–Appellee,**

v.

**INSURANCE COMPANY OF NORTH AMERICA; Walbridge–Aldinger Company, Defendants–Appellants,**

**Comp–Aire Systems, Inc., Defendant.**

**No. 89–1641.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 23, 1990.

Decided Aug. 22, 1990.

Bruce N. Elliott (argued), Conlin, McKenney & Philbrick, Ann Arbor, Mich., for plaintiff-appellee.

Stuart H. Teger (argued), Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for defendants-appellants.

Before MARTIN and RYAN, Circuit Judges, and PECK, Senior Circuit Judge.

RYAN, Circuit Judge.

This is an appeal from a judgment awarded to a sub-sub-subcontractor on a construction project for The University of Michigan. Defendant-appellants, the project's principal contractor and the principal contractor's surety, appeal the award alleging, foremost, that Mich.Comp.Laws § 129.201, pursuant to which the judgment was awarded, does not apply to the construction project involved in this case. We agree, and now reverse.

## I.

In 1984, the Regents of The University of Michigan announced plans to construct additions to the University's College of Engineering Building. Rather than contracting for the project directly, the Regents, in a 1984 agreement, conveyed the Engineering Building site to the State of Michigan Building Authority, a public corporation, which agreed to finance the construction work and, upon its completion, lease the completed building to the University. The University hired Walbridge–Aldinger Company as principal contractor to supervise the project. The University also arranged for the Insurance Company of North America ("INA") to give it a Contractor's Payment Surety Bond to cover claims of certain other contractors.

Walbridge–Aldinger thereafter contracted with Comp–Aire Systems, Inc. to design a "clean room" for the project. A "clean room" is a contaminant-free area for solid state electronics research. Comp–Aire, in turn, contracted with Pullman Construction Industries to install piping in the clean room. Pullman subsequently contracted with Dynamic Heating and Piping Company, the plaintiff-appellee, to assist it in the installation of pipes for the clean room. Dynamic's relation to Walbridge–Aldinger may thus be characterized as that of a "sub-sub-subcontractor."

The work was begun and the project was nearly completed when, in May 1987, Pullman filed for bankruptcy. Among Pullman's outstanding obligations at the time of the bankruptcy was a debt of $253,647.18 allegedly owed to Dynamic for work performed on the Engineering Building project at Pullman's behest.

Having exhausted all other remedies against Pullman without success, Dynamic, an Illinois corporation, filed a diversity suit in United States District Court for the

Eastern District of Michigan against Comp–Aire, a Michigan corporation, and INA, a Pennsylvania corporation. Shortly thereafter, pursuant to stipulation, Dynamic amended its complaint by adding Walbridge–Aldinger, a Michigan corporation, and claimed entitlement to the funds Pullman allegedly owed it under the bond INA issued for Walbridge–Aldinger to the University.

Walbridge–Aldinger and INA promptly moved to dismiss the suit under Fed.R. Civ.P. 12(b)(6), arguing that Dynamic, a sub-sub-subcontractor, was not a "claimant" as defined in the INA bond and thus could not recover under it. According to INA's bond, a "claimant" is "one having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract...." The bond, therefore, protected only labor or material suppliers which could be deemed "sub-subcontractors."

In its brief in opposition to the defendants' motion to dismiss, Dynamic conceded that it was not a "claimant" under the INA bond but made the following three-part argument:

- The INA bond was required by the act set out at Mich.Comp.Laws §§ 129.201–129.211.
- That act requires a bond to cover *all* those who provide labor or materials to a public project, and
- The INA bond must be read as though it complied with the terms of that act.

After a flurry of briefing, the district court allowed Dynamic to file another amended complaint incorporating its new theory of entitlement to recover under the INA bond.

Walbridge–Aldinger and INA moved to dismiss the second amended complaint on the ground that the requirements of Mich. Comp.Laws §§ 129.201–129.211 ("the bonding act") did not apply to Walbridge–Aldinger's construction contract with the University and that, at any rate, its liability did not, by the terms of its bond, extend to remote claimants like Dynamic. The motion was denied, as was a later motion for summary judgment. However, the district court granted Dynamic a partial motion for summary judgment, holding that Dynamic had performed all its duties under the Pullman contract; that the amount in dispute was $253,647.18; and that it could assert a claim against Walbridge–Aldinger and INA's bond because, as read in connection with the bonding act, the bond protected all labor and material suppliers to the project. The only remaining issue was whether Dynamic timely notified Walbridge–Aldinger and INA of its claim according to the terms of the INA bond. Following a bench trial on April 17 and 18, 1989, the district court found that Dynamic's claim was timely filed and entered a $253,647.18 judgment for Dynamic, plus $40,541.18 interest and costs, on May 17, 1989.

Walbridge–Aldinger and INA now appeal from that judgment, assigning five errors alternatively. They assert: 1) the bonding act is not applicable to the Walbridge–Aldinger/University of Michigan construction contract; 2) if the bonding act applies, it does not protect sub-sub-subcontractors like Dynamic; 3) if the bonding act applies and protects sub-sub-subcontractors, Dynamic nevertheless cannot claim under it because Dynamic failed to comply with its notice provisions; 4) if all their above claims fail, they are entitled to reversal because the district court erred when it engrafted provisions of the bonding act into their bond agreement; and 5) regardless of the prior issues, the district court erred in granting summary judgment on the amount of damages involved in this case.

█ Because we reverse the district court's ruling on the threshold question of the bonding act's applicability, we do not address Walbridge–Aldinger's and INA's other assignments of error. We are guided by our obligation to apply Michigan substantive law, *see Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and engage in a *de novo* review of the legal question of the bonding act's applicability. *See Michigan Consol.*

*Gas Co. v. Panhandle E. Pipe Line Co.,* 887 F.2d 1295, 1299 (6th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1806, 108 L.Ed.2d 937 (1990).

## II.

The portion of the bonding act upon which the district court predicated its judgment for Dynamic states, in pertinent part:

Before any contract, exceeding $50,000.00 for the construction, alteration, or repair of any public building or public work or improvement of the state or a county, city, village, township, school district, public educational institution, other political subdivision, public authority, or public agency hereinafter referred to as the *governmental unit,* is awarded, the proposed contractor, hereinafter referred to as the "principal contractor", shall furnish at his or her own cost to the governmental unit a performance bond and a payment bond which shall become binding upon the award of the contract to the principal contractor.

Mich.Comp.Laws. § 129.201 (emphasis added).

The parties agree that The University of Michigan's construction project involved a "public building" under the bonding act and that Walbridge–Aldinger is the "principal contractor." The issue that divides them is whether the project was on behalf of a "governmental unit" within the meaning of the bonding act.

■ The district court held that because the Michigan Building Authority had title to the project's site with the intent of later leasing the building to the University, the construction project was on behalf of the Authority, presumably a "governmental unit" under the bonding act.[1] We believe the project was The University of Michigan's and conclude that, because the University is not a "governmental unit" according to settled Michigan authority, the district court erred in ruling that the bonding act applied in this case.

## A.

The State of Michigan created the Michigan Building Authority pursuant to the State Building Authority Act. *See* Mich.Comp.Laws § 830.411, *et seq.* As the pertinent part of the preamble to that enactment explains, the act is:

AN ACT creating the state building authority with power to acquire, construct, furnish, equip, own, improve, enlarge, operate, mortgage, and maintain buildings, necessary parking structures or lots and facilities, and sites therefor, or furnishings or equipment for the use of the state or any of its agencies; ... to provide for the issuance of revenue obligations by the building authority to be paid from the true rentals to be paid by the state and other resources and security provided for and pledged by the building authority; to authorize the creation of funds; to authorize the conveyance of lands by the state or any of its agencies for the purposes herein authorized; ... and to provide for other matters in relation thereto.

From this statement, and the substantive provisions of the State Building Authority Act, *see* Mich.Comp.Laws §§ 830.411–830.-425, it is clear that the Authority's main function is to raise funds to assist the State of Michigan or its agencies to undertake and complete construction projects. It does so not to further interests personal to it, but for the purposes of the agency with which it is dealing.

In one of the opening paragraphs of its 1984 lease agreement with The University of Michigan, the Authority attests that its acquisition of the project site

---

**1.** The district court stated:

Contrary to Defendants' assertions, the terms of the lease indicate that the Authority owns the Engineering Building in both form and substance. Defendants do not argue and have not presented evidence to suggest that construction projects performed on behalf of the Authority are not subject to the Act. The plain language of the Act clearly indicates that buildings owned and constructed by or on behalf of the Authority are subject to the terms of the Act. Therefore, the Court finds that this construction project was in fact subject to the terms of the Act.

is necessary in order for the State and [the University] to carry out necessary governmental functions and enterprises and to provide necessary services to the people of the State, as mandated or permitted by Constitution and law, and the use of [the State Building Authority Act] to accomplish such acquisition represents the most practical means to that end at the lowest cost to the State and [the University].

Under section 2.4 of the agreement, the University, not the Authority, is the contracting party for the project. The University, not the Authority, maintained responsibility for supervising the work and using its "best efforts" to ensure that the project was completed in a timely and satisfactory manner pursuant to section 2.6 of the agreement. The leasing arrangement between the University and the Authority, outlined in Article III of the agreement, provides a means by which the Authority ensured that it would receive revenues to cover its financial outlay in issuing the bonds for the project. And, section 6.12 of the agreement provided:

After the 1984 Bonds and any additional bonds authorized as provided in the Resolution [approving the project], which pledge for their payment the Rental, are paid in full or provision for the payment thereof is made as provided in the Resolution, and upon request by [the University], the Authority shall convey title of the Facility to [the University] for consideration of $1.00 and [the University's] assumption of all monetary obligations for and legal responsibilities for the operation and maintenance of the Facility.

We think these provisions demonstrate that, while the Engineering Building site was unquestionably owned by the Authority, the project was not undertaken on behalf of the Authority but for the benefit of The University of Michigan, which required the assistance of the Authority to raise revenues through the issuance of bonds. The Authority's interest in the project was limited to its concern for making good on the bond obligations it undertook for the project. Otherwise, its concerns were subsumed to those of the University.

Dynamic's arguments, upon which the district court relied, that the control the Authority asserted over the project demonstrates that the project was its own, and not the University's, are unpersuasive. Section 2.1 of the agreement, which permitted the Authority to limit the University's ability to make changes in the project, did so only to the extent that such changes would materially alter the nature of the project. Section 4.4(c) of the agreement, which gave the Authority the right to terminate its lease with the University in the event of the destruction of the completed building or a lack of funds by the Authority, gave the same right to the University. The fact that proceeds from insurance are payable to the Authority, not to the University, pursuant to section 4.4(d) of the agreement, does not affect our conclusion. At most, these provisions demonstrate no more than an intention by the parties to protect, in specific ways, the party who undertook the bulk of the initial financial obligations for the project.

B.

Having thus concluded that the construction project was The University of Michigan's and not the Authority's, we must determine whether the University is a "governmental unit" under Mich.Comp. Laws § 129.201. If it is, the bonding act applies to this case. However, we think Michigan law establishes that the University is not a "governmental unit" for purposes of the bonding act.

In *The William C. Reichenbach Co. v. State of Michigan*, 94 Mich.App. 323, 288 N.W.2d 622 (1979), a subcontractor on a construction project to renovate a Michigan State University dormitory sued Michigan State to collect money the general contractor allegedly owed the subcontractor. The subcontractor's efforts to be paid for his work were blocked by the bank to which the general contractor was indebted. In looking to Michigan State for payment, the subcontractor claimed that Michigan State was negligent in failing to require the general contractor to provide a performance

and payment bond regarding the renovation, and that that negligence was the proximate cause of its losses. *Id.* at 327, 288 N.W.2d at 624. The subcontractor alleged, in part, that Michigan State's duty to supply such a bond derived from the 1963 version of Michigan's bonding statute, which had the same operative language as current Mich.Comp.Laws § 129.201. *See id.* at 331, 288 N.W.2d at 626. The court of appeals was required to determine whether the 1963 bonding act was applicable to Michigan State's dormitory project. It had to do so by deciding whether Michigan State was a "public educational institution," within the meaning of the 1963 bonding act, and thus was a "governmental unit" for the purposes of that act.

The court of appeals held:

[T]he term "public educational institution", as that term is used in the performance bonding statute, applies to only those colleges and universities whose governing boards are not created in the [Michigan] constitution. Hence, the lower court erred in holding the performance bonding statute applicable to defendants [the State of Michigan and Michigan State trustees]. The defendant board of trustees had no obligation to secure a performance bond from the principal contractor and, thus, plaintiff cannot maintain this action in negligence for their failure to do so.

*Reichenbach,* 94 Mich.App. at 336, 288 N.W.2d at 628. The court's reasoning was derived in part from *Weinberg v. Regents of the University of Michigan,* 97 Mich. 246, 56 N.W. 605 (1893), which established that Michigan's constitutionally-created universities enjoy independence from statutory regulation applicable to other state agencies.

*Weinberg* began as a damages suit against the Regents of The University of Michigan by a subcontractor's materials supplier during the construction of The University of Michigan Hospital. *Id.* at 247, 56 N.W. at 605. The supplier, like the subcontractor in *Reichenbach* with regard to Michigan State, alleged that The University of Michigan was negligent in failing to require the principal contractor to supply a payment bond before engaging in the project. *Id.* at 249, 56 N.W. at 606. As in *Reichenbach* with regard to Michigan State, the supplier in *Weinberg* attempted to establish The University of Michigan's duty to require a bond by relying on Michigan's 1885 public buildings bonding statute.[2] *Id.* at 248, 56 N.W. at 606.

The Michigan Supreme Court held that the requirements of the bonding statute did not apply to the Regents of The University of Michigan. *Id.* at 255, 56 N.W. at 608.[3] A majority of the justices reasoned:

The University [of Michigan] is the property of the people of the State, and in this sense is State property so as to be exempt from taxation. But the people, who are the corporators of this institution of learning, have, by their Constitution, conferred the entire control and management of its affairs and property upon the corporation designated "the Regents of the University of Michigan," and have thereby excluded all departments of the State government from any

**2.** The bonding statute at issue in *Weinberg* provided:

"When public buildings, or other public works or improvements, are about to be built, repaired, or ornamented under contract, at the expense of this state, or of any county, city, village, township, or school district thereof, it shall be the duty of the board of officers, or agents, contracting on behalf of the state, county, city, village, township, or school district, to require sufficient security by bond, for the payment by the contractor, and all subcontractors, for all labor performed, or materials furnished in the erection, repairing or ornamenting of such building, works or improvements."

*Weinberg,* 97 Mich. at 249–50, 56 N.W. at 606 (quoting 1883 Mich. Pub. Act No. 94 as amended by 1885 Mich. Pub. Act No. 45).

**3.** For clarity's sake, it is worth noting that, although the opinion by Justice Montgomery appears *before* the opinion by Justice Grant in both the official and unofficial reports of *Weinberg,* Justice Grant's opinion, from which we quote, is the opinion of the majority of the court. Justices Hooker and Long joined in Justice Grant's opinion, while only Justice McGrath agreed with Justice Montgomery. Before 1970, it was not unusual for the Michigan Supreme Court to lead its report of a decision with the minority opinion.

interference therewith. The fact that it is State property does not bring the Regents within the purview of the [bonding] statute. The people may, by their Constitution, place any of its institutions or property beyond the control of the Legislature.

*Id.* at 254–55, 56 N.W. at 608 (citation omitted). On that basis, the court dismissed the supplier's suit. *Id.* at 255, 56 N.W. at 608.

To whatever extent *Weinberg* may be deemed not applicable to the case *sub judice,* since it involved a different statute, *Reichenbach* disposes of this case. "The law of Michigan is controlled by a decision of the Michigan Court of Appeals until the Michigan Supreme Court or another panel of the Michigan Court of Appeals rules otherwise." *Weiczorek v. Volkswagenwerk, A.G.,* 731 F.2d 309, 310 (6th Cir. 1984).

Like Michigan State, The University of Michigan was created under Mich. Const. art. VIII, § 5. The University is thus not a "public educational institution" within the meaning of Mich.Comp.Laws § 129.201 and cannot be deemed a "governmental unit" under the bonding act. The requirements of Mich.Comp.Laws § 129.201, therefore, were not applicable to the Engineering Building project.

Dynamic argues that the facts of *Reichenbach* are distinguishable from the facts in this case since, in *Reichenbach,* Michigan State owned the dormitory slated for renovation while in this case the Authority owned The University of Michigan's project site. We do not read *Reichenbach* as turning on Michigan State's ownership of the property and repeat our conclusion that the Authority's ownership did not alter the fact that the project was being performed on behalf of The University of Michigan. Pursuant to its statutory function, the Authority was only assisting the University with the project. *See* Mich.Comp. Laws §§ 830.411–830.425.

To summarize, we hold: 1) the project in question was undertaken on behalf of The University of Michigan and not the Michigan Building Authority; 2) The University of Michigan is not a "public educational institution" within the meaning of Mich. Comp.Laws § 129.201 of the bonding act; 3) since The University of Michigan is not a "public educational institution" within the meaning of Mich.Comp.Laws § 129.201, the Engineering Building project was not on behalf of a "governmental unit" and the requirements of the bonding act did not apply to the project; 4) since the bonding act was not applicable to the project, it did not oblige The University of Michigan to require Walbridge–Aldinger to supply a payment bond; and 5) since, as Dynamic concedes, Walbridge–Aldinger and INA's bond did not protect sub-sub-subcontractors like Dynamic, Dynamic has no claim against Walbridge–Aldinger and INA.

### III.

For the reasons stated above, we REVERSE the judgment of the district court and REMAND the matter with the instruction that the plaintiff's amended complaint be dismissed.