ASSEMBLERS, INC v AMERICAN MANUFACTURERS
MUTUAL INSURANCE COMPANY

Docket No. 281728. Submitted December 2, 2008, at Detroit. Decided
December 9, 2008, at 9:05 a.m. Leave to appeal sought.

Assemblers, Inc., brought an action in the Wayne Circuit Court
against American Manufacturers Mutual Insurance Company,
United States Fidelity & Guaranty Company (USF&G), and Metro
Steel Fabricators, Inc., seeking payment for work performed on a
project involving the demolition and reconstruction of a school
owned by the Detroit Public Schools. The Detroit Public Schools
contracted with American International, Inc., to be the general
contractor for the project. American International obtained a
payment bond from USF&G and subcontracted part of the project
to Metro Steel, which obtained its own payment bond from
American Manufacturers. Metro Steel then subcontracted part of
the work to Assemblers. On May 8, 2003, Assemblers stopped
working because it was not receiving its expected payments. On
March 25, 2004, the Detroit Public Schools terminated its contract
with American International because of its failure to properly
make the payments. On May 6, 2004, Metro Steel acknowledged
the amount that Assemblers was still owed. The Detroit Public
Schools persuaded Assemblers to return to the work site and
complete its work on August 19, 2004. Assemblers notified both
sureties on August 27, 2004, that it was making a claim on each
payment bond. Assemblers commenced its action when both
sureties denied the claim. All parties moved for summary disposi-
tion. The court, Kathleen Macdonald, J., granted summary dispo-
sition in favor of the sureties on the bases that the claim against
USF&G was not filed within the 90-day period required by the
public works bond statute, MCL 129.201 et seq., and the claim
against American Manufacturers was not filed within the one-year
period for giving notice stated in its payment bond. Assemblers
appealed.

The Court of Appeals held:

1. MCL 129.201 imposes the requirement of providing a bond
under the statute only on the principal contractor. Metro Steel was
not a principal contractor and, therefore, was not required by

statute to provide a bond. The payment bond issued by American Manufacturers was a contractual, rather than statutory, bond and, therefore, the limitations period provided therein applied. The grant of summary disposition in favor of American Manufacturers must be affirmed.

2. The bond issued by USF&G to American International, the principal contractor, was a statutory bond. Therefore, Assemblers was required to give written notice to the principal contractor and the governmental unit involved within 90 days from the date on which the claimant performed the last of the labor or furnished the last of the material for which the claim is made. MCL 129.207. The evidence is not sufficient to determine whether the work Assemblers performed on August 19, 2004, was in performance of the contract. The grant of summary disposition in favor of USF&G must be reversed and the case must be remanded for further proceedings to determine whether the work performed on August 19, 2004, was work on the contract or pursuant to a separate agreement between Assemblers and the Detroit Public Schools.

3. There is no requirement in the statute or the bonds that Assemblers exhaust any recovery from American Manufacturers, the surety closest in line to the claimant, before it may recover under the bond issued by USF&G.

Affirmed in part, reversed in part, and remanded.

BONDS — PUBLIC WORKS — PRINCIPAL CONTRACTORS.

The public works bond statute imposes the requirement of providing a bond under the statute only on the principal contractor; the principal contractor is the contractor who has the primary responsibility for performing the terms of the contract (MCL 129.201).

*Kallas & Henk PC* (by *John F. Fleming*) for Assemblers, Inc.

*Steven A. Wright, P.C.* (by *Sandra L. Wright* and *Steven A. Wright*), for American Manufacturers Mutual Insurance Company.

*Alber Crafton, PLLC* (by *Phillip G. Alber* and *Omar J. Harb*), for United States Fidelity & Guaranty Company.

Before: BORRELLO, P.J., and DAVIS and GLEICHER, JJ.

DAVIS, J. Plaintiff appeals as of right orders of summary disposition entered in favor of defendants American Manufacturers Mutual Insurance Company (American Manufacturers) and United States Fidelity & Guaranty Company (USF&G). We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

This case arises out of the Howe Elementary School demolition and reconstruction project begun by the Detroit Public Schools in 2001. The Detroit Public Schools contracted with American International, Inc., to be the general contractor for the project. American International obtained a payment bond from USF&G, and it subcontracted part of the construction project to defendant Metro Steel Fabricators, Inc. (Metro Steel). Metro Steel obtained its own payment bond from American Manufacturers. Metro Steel then subcontracted part of the construction work to plaintiff.

On May 8, 2003, plaintiff "stopped working on the Howe Elementary School project" without completing it. Plaintiff contends that its work on the project was nearly complete at that time, but that it was not receiving its expected payments and it perceived that it would continue not receiving its payments. Plaintiff therefore ceased work "to avoid further losses." It is undisputed that plaintiff was not, in fact, paid all that it was owed on the Howe Elementary School project. On March 25, 2004, the Detroit Public Schools formally terminated the construction contract with American International for failure "to properly make payments to Subcontractors or for labor, materials and equipment" pursuant to that contract.[1] On May 6, 2004, Metro Steel explicitly acknowledged in a letter to plaintiff that

---

[1] American International has apparently filed for bankruptcy and ceased to exist.

$124,666 remained owing on the Howe Elementary School project. Plaintiff seeks the same amount in the instant action. Nevertheless, the Detroit Public Schools thereafter persuaded plaintiff to complete its work on the project, giving plaintiff "assurances of payment." On August 19, 2004, plaintiff returned to the work site and completed its work on the Howe Elementary School project.

On August 27, 2004, plaintiff sent notices to both sureties that it was making a claim on each of the payment bonds. Plaintiff then commenced the instant action against them. All parties filed motions for summary disposition. USF&G argued that the last day plaintiff worked as a subcontractor to a subcontractor on the original contract was May 8, 2003, and that it failed to provide notice of its claim within 90 days thereof, as required by the contractor's bond for public buildings or works act, MCL 129.201 *et seq.*[2] USF&G also argued that it could not be held liable on the bond because it was a secondary surety to American Manufacturers's bond and because plaintiff was responsible for delays in the project. American Manufacturers argued that its bond contained a contractual limitations period that required claimants to file suit within one year of giving notice under the bond or of the last day on which work was performed and that plaintiff exceeded this date by more than three months under any possible interpretation of the facts. Plaintiff argued that the work it performed on August 19, 2004, was merely a completion of its work on its subcontract with a subcontractor and that American Manufacturers's bond was a statutory bond and it was required to afford the

---

[2] This is also known as "the public works bond statute." See, e.g., *W T Andrew Co, Inc v Mid-State Surety Corp*, 450 Mich 655, 657; 545 NW2d 351 (1996).

longer limitations period available under the public works bond statute. The trial court granted summary disposition in favor of the sureties; the parties later agreed to a consent judgment and final order resolving the remaining claims.[3]

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party. Where the evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. *Maiden, supra* at 120. A motion brought under MCR 2.116(C)(8) should be granted only where the complaint is so legally deficient that recovery would be impossible even if all well-pleaded facts were true and construed in the light most favorable to the nonmoving party. *Maiden, supra* at 119. This Court also reviews de novo as a question of law the proper interpretation of both contracts and statutes. *Detroit Fire Fighters Ass'n, IAFF Local 344 v Detroit*, 482 Mich 18, 28; 753 NW2d 579 (2008).

MCL 129.201 *et seq.* was created by the Legislature in order to protect "principal contractors" from the void left by the "long-standing mechanics' lien law" that prohibited mechanics' liens on public buildings. *Adamo Equip Rental Co v Mack Dev Co, Inc*, 122 Mich App 233, 236; 333 NW2d 40 (1982). Although intended "to safeguard and protect contractors and materialmen in the public sector," it significantly distinguishes between "rights and duties of the primary contractor and the

---

[3] Metro Steel is not a party to this appeal.

rights and duties of the secondary contractors . . . ." *Id.* at 236-237. This Court has explained that "the principal contractor" means "the contractor who has the primary responsibility for performing the terms of the contract" and might or might not be the first contractor. *Id.* at 237. The plain language of MCL 129.201 imposes the requirement of providing a bond under the statute *only* on the principal contractor.

It is undisputed that Metro Steel was not the principal contractor, so Metro Steel was not required by statute to provide a bond pursuant to MCL 129.201 *et seq.* Plaintiff contends, however, that the bond issued by American Manufacturers is a statutory bond because it incorporates by reference Metro Steel's subcontract with American International, which in turn allegedly required Metro Steel to obtain a statutory bond because the subcontract between Metro Steel and American International incorporated by reference the prime contract between American International and the Detroit Public Schools that required American International to provide a statutory bond.[4] The prime contract appears to require the general contractor to obtain a payment bond using a form explicitly specifying that the bond is statutory and in conformance with the public works bond act. However, Metro Steel is not the general contractor, the reference to "bidders" appears to be in the context of dealings directly with the project owner, and the American Manufacturers bond did not include that particular language.

---

[4] Plaintiff also argues that the plain language of American Manufacturers's bond shows that it is a statutory bond, but the paragraph on which plaintiff relies is inapplicable: by its own terms, that paragraph only applies where the "[b]ond has been furnished to comply with a statutory or other legal requirement." Because Metro Steel was not the principal contractor, it did not obtain the bond from American Manufacturers to comply with "a statutory or other legal requirement."

Indeed, there is *no* language in the American Manufacturers bond or in the subcontract between American International and Metro Steel making *any* reference to a statutory bond. Rather, the subcontract states that any other documents referenced are "as amended or supplemented by other provisions of the Subcontract Documents," and it explicitly states that the subcontract takes precedence over the prime contract in the event any provisions are inconsistent. Given that MCL 129.201 *et seq.* are only intended to govern the principal contractor, and given that none of the documents executed by any party to the instant appeal imposed any requirement of a statutory bond, we conclude that no statutory bond was required of American Manufacturers.[5] We agree with the trial court that the payment bond issued by American Manufacturers was contractual, rather than statutory, so the limitations period specified therein applied.

Conversely, it is undisputed that the USF&G payment bond was a statutory bond because it was issued to American International, the principal contractor on the Howe Elementary School project. As a consequence, for plaintiff to make a claim under the bond, it must have "given written notice to the principal contractor and the governmental unit involved within 90 days from the date on which the claimant performed the last of the labor or furnished or supplied the last of the material for which the claim is made . . . ." MCL

---

[5] Plaintiff also relies on caselaw involving similarly worded payment bonds. But those cases involved principal contractors who had contracted directly with a public entity, and there was therefore no dispute that statutory bonds were required, *Gloucester City Bd of Ed v American Arbitration Ass'n*, 333 NJ Super 511; 755 A2d 1256 (2000), or were cases where a statutory bond was otherwise indisputably required. *Kirkpatrick v Phillips*, 162 Mich 251; 127 NW 340 (1910). These cases are therefore irrelevant to the issue at hand.

129.207. Additionally, a "claimant" is defined as "a person having furnished labor, material, or both, used or reasonably required for use in the performance of the contract." MCL 129.206. The parties agree that the applicable limitations period is 90 days after the last day of work on the contract. The bond act itself is to be liberally construed, but the notice requirement must be strictly construed and enforced. *Grand Blanc Cement Products, Inc v Ins Co of North America*, 225 Mich App 138, 144; 571 NW2d 221 (1997). Plaintiff provided "notice" on August 27, 2004. Therefore, the most significant issue is whether the work plaintiff performed on August 19, 2004, was "in the performance of the contract."

We find that issue impossible to resolve on the basis of the existing factual development in this matter. It is not seriously contended that the work plaintiff performed on that date was so *de minimis* that it cannot be counted, nor is it seriously contended that the work on that date was not work that had originally been called for under the contract. USF&G argues that the total amount plaintiff claims it is owed *on the contract* had already been agreed on by all relevant parties *before* it performed the additional day of work. This could be construed as an acknowledgement that the original contract was terminated at that point, but it could also simply be an acknowledgement of why plaintiff was no longer performing work on the contract; in any event, the letter only purports to confirm that plaintiff was owed further payment. Although plaintiff apparently performed the additional day of work on the basis of "assurances" by the Detroit Public Schools, there is in fact no evidence in the record shedding any light on what actually happened in that transaction. USF&G points out that plaintiff documented that additional day of work on a form entitled "additional work authoriza-

tion." However, USF&G's argument that the mere title of a form proves anything about the underlying transaction elevates form over substance, and in any event, the form also specifies that Metro Steel (the subcontractor) is the entity to be invoiced.

We find that the evidence—when properly viewed in the light most favorable to the nonmoving party—simply cannot foreclose or prove *either* possibility. Without further factual development, neither party could be entitled to summary disposition on this basis.

We do, however, conclude that *if* the work plaintiff performed on August 19, 2004, was "on the contract," the fact that American International had been terminated as the general contractor is irrelevant. USF&G's bond provides that it will not be liable for obligations of the contractor (American International) that are unrelated to the construction project. However, the unpaid work for which plaintiff is attempting to bring a claim all predates American International's termination, and in any event, American International's termination as the general contractor did not terminate plaintiff's status as a subcontractor to a subcontractor. The issue remains whether the work was "on the contract" or pursuant to a separate agreement between plaintiff and the Detroit Public Schools.

USF&G also urges us to adopt § 53 of the Restatement of Suretyship and Guaranty, 3d. In particular, USF&G argues that suretyship law obligates a claimant to exhaust recovery from the surety "closest" to the claimant, which in this case would be American Manufacturers. USF&G further argues that if plaintiff cannot do so because it exceeded the applicable limitations period in American Manufacturers's bond, plaintiff can only blame itself for not having a remedy. However, it is undisputed that there is no Michigan law on this point.

We conclude that applying USF&G's proposed rule here would be contrary to the stated purpose of MCL 129.201 *et seq.*

The public works bond act is to be liberally construed to "protect contractors and materialmen in the public sector to ensure that they do not suffer injury when other contractors default on their obligations." *W T Andrew Co, Inc v Mid-State Surety Corp*, 450 Mich 655, 659; 545 NW2d 351 (1996). It was enacted by the Legislature because materialmen and contractors cannot place liens on public buildings; by its own express terms, it is intended to protect parties who "furnished labor, material, or both, used or reasonably required for use in the performance of the contract." MCL 129.206; see MCL 129.203; *Kammer Asphalt Paving Co, Inc v East China Twp Schools*, 443 Mich 176, 181-182; 504 NW2d 635 (1993). The payment bond issued by USF&G likewise defines a "claimant" to include any "individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Contract."

Neither the bond nor the statute contains an exemption or exception for any other payment bonds, nor do any of the conditional prerequisites to recovery include exhaustion of recovery from any other sureties. Indeed, they show the opposite. The Legislature passed the public works bond act to require bonds like the one issued by USF&G for the purpose of protecting parties like plaintiff. The plain language of the statute and the bond itself show that USF&G is liable on its bond irrespective of the American Manufacturers bond, at least presuming plaintiff is found on remand to have fulfilled the other requirements for being a claimant.

The sureties finally assert that plaintiff cannot recover on either bond because plaintiff was responsible for delays in the construction project. However, the trial court did not address this matter, and facts necessary to make that determination do not appear to have been entered into the record. We decline to consider this issue in light of the existing lack of factual development.

We affirm the trial court's grant of summary disposition in favor of American Manufacturers. We reverse the trial court's grant of summary disposition in favor of USF&G, and we remand to the trial court for further proceedings. We do not retain jurisdiction.